375 So.2d 113 (1979)
Silton TURNER, Jr., Plaintiff-Appellant,
v.
AMERICAN MUTUAL INSURANCE COMPANIES, Defendant-Appellee.
No. 6985.
Court of Appeal of Louisiana, Third Circuit.
May 23, 1979.
Rehearing Denied August 16, 1979.
Writ Granted October 26, 1979.
*114 Knoll & Knoll, J. Eddie Knoll, Marksville, for plaintiff-appellant.
Stafford, Trimble, Randow & Smith, Larry Stewart, Alexandria, for defendant-appellee.
Before WATSON, STOKER and DOUCET, JJ.
DOUCET, Judge.
This is a suit for workmen's compensation benefits brought by plaintiff, Silton Turner, Jr., against his employer's compensation insurer, American Mutual Insurance Company. The central issue presented for review by this court is whether the trial judge erred in determining that plaintiff is not totally and permanently disabled and, therefore, not entitled to recover additional benefits for his injury. Plaintiff also asserts that defendant has failed to pay certain costs assessed by the trial court. Defendant appeals the trial court's award of penalties and attorney's fees to plaintiff under the provisions of LSA-R.S. 22:658.
Silton Turner, Jr. was employed by Charles W. Mullins as a saw-hand in the latter's logging business. Plaintiff's duties included cutting and storing logs and driving a vehicle known as a "skidder", utilized to transport felled logs. On February 22, 1977, while engaged in the course and scope of his employment, plaintiff injured his right foot, when it became lodged in the blades of the skidder. He was taken to Dr. Thomas LaCour of Oakdale, Louisiana and from there to Rapides General Hospital, where he was examined by Dr. Cedric Lowrey, a specialist in orthopedics. Dr. Lowrey remained plaintiff's treating physician and subsequently performed two operations on his foot. Ultimately, he was discharged by Dr. Lowrey with a thirty (30) to forty (40) percent impairment in function of his right foot.
Defendant paid workmen's compensation benefits to plaintiff from the date of the accident until February 21, 1978, at which time benefits were terminated upon receipt of a report from Dr. Lowrey, stating that plaintiff was capable of resuming work "on a trial basis". This suit for plaintiff's total and permanent disability was thereafter *115 filed on April 11, 1978. On that date, defendant resumed payments to plaintiff and continued them under the applicable schedule until June 27, 1978. Additionally, defendant brought to date all past due compensation payments owed to plaintiff. The record indicates that defendant has paid compensation totaling $6,666.66, and medical expenses in the amount of $5,282.05, for a total reimbursement of $11,948.71.
The trial court found that plaintiff is not totally and permanently disabled within the contemplation of the recently amended Workmen's Compensation Act. The testimony of both Dr. Lowrey and Dr. George Hearn, a psychologist and vocational consultant, indicated that plaintiff could return to some type of gainful employment. Plaintiff has had previous experience as a truck driver and an assembly line worker as well as a saw-hand. The testimony of these experts indicated that he could still perform a job in one of those areas. Therefore, his claims for total disability and for penalties and attorney's fees, based on defendant's alleged arbitrary termination of compensation benefits, were denied.
Plaintiff thereafter applied for and was granted a new trial. The trial court again denied his demands for compensation benefits, however, it reversed its earlier conclusion regarding penalties and attorney's fees and awarded plaintiff $3,000.00 plus 12% of the benefits paid by the insurer after suit was filed. On appeal, defendant contests this award while plaintiff seeks to have it increased to $5,000.00. Plaintiff also appeals from the denial of recovery for total and permanent disability.
At the trial of this matter, plaintiff testified that as a result of his accident, he has experienced substantial pain which prevents him from engaging in further employment. (Tr. 78, 82) Although plaintiff was discharged by Dr. Lowrey and told that he could go back to work, plaintiff stated that he was unable to do so due to the pain in his foot. (Tr. 77) Despite these difficulties, plaintiff admitted that he assisted his family in yard work, participated in limited sporting activities, and can drive a vehicle. (Tr. 87, 88, 91) He testified that he had no special employment skills. (Tr. 73) In the past, he has been employed as a truck driver, a canner and a logger. (Tr. 69-71) Our review of plaintiff's testimony leads us to the conclusion that he has made no serious effort to return to any type of gainful employment.
As plaintiff's treating physician, Dr. Lowrey followed plaintiff's progress from the initial date of the injury through his release in February of 1978. At the date of discharge, Dr. Lowrey was of the opinion that plaintiff had reached his maximum improvement. Dr. Lowrey assessed plaintiff's disability of the right foot at thirty (30) to forty (40) percent. Under Dr. Lowrey's analysis, this limits plaintiff's ability to work on his tip-toes or to work in a position that requires him to push up on his toes, however, it should not restrict his capacity for prolonged standing or walking. (Deposition pp. 22, 23) Despite his disability, Dr. Lowrey felt that plaintiff could return to work.
That opinion was substantiated by the testimony of Dr. George Hearn, an expert in vocational training and rehabilitation. Dr. Hearn tested plaintiff's intelligence and ability to utilize various learning skills. Dr. Hearn concluded that plaintiff currently has the skills necessary to do the type of work he has performed in the past. (Tr. 120) Although Dr. Hearn noted that plaintiff has limited intellectual and academic ability, he was of the opinion that he could return to logging or pursue a career as a driver or assembly line worker. (Tr. 124, 139)
The only medical evidence introduced to rebut that offered by Dr. Lowrey and Dr. Hearn was the deposition and report of Dr. Don Joffrion, an orthopedic surgeon. Dr. Joffrion examined the plaintiff on one occasion, apparently in preparation for litigation. Dr. Joffrion agreed with Dr. Lowrey's determination of the extent of plaintiff's disability. However, he was of the opinion that plaintiff's injury would prevent his return to work. Basically, his findings were that any prolonged standing, *116 walking, stooping or climbing would produce substantial pain and prevent plaintiff from engaging in the type of work for which he is best suited. (Deposition pp. 11, 12, 15)
In order to recover benefits for total and permanent disability, the claimant must establish that he is unable to pursue any type of gainful employment as a result of his injury. Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3rd Cir. 1978), writ denied 358 So.2d 645 (La. 1978); Ashworth v. Elton Pickering, Inc., 361 So.2d 940 (La.App. 3rd Cir. 1978), writ denied 362 So.2d 1119 (La.1978). A claimant who is physically capable of returning to work may nonetheless be totally disabled if he would be subjected to substantial pain by doing so. Rachal v. Highlands Insurance Company, supra; Phillips v. Dresser Engineering Co., 351 So.2d 304 (La.App. 3rd Cir. 1977). However, he will not be considered totally disabled because of the presence of residual pain and discomfort, unless it is substantial and appreciable. Breaux v. Kaplan Rice Mill, Inc., 280 So.2d 923 (La.App. 3rd Cir. 1973); Bailey v. Schott and Company, Inc., 334 So.2d 753 (La.App. 4th Cir. 1976), writ denied 338 So.2d 300 (La.1976).
The claimant has the burden of proving to a legal certainty and by a reasonable preponderance of the evidence that he is disabled. Soileau v. Bituminous Casualty Corp., 348 So.2d 1313 (La.App. 3rd Cir. 1977); Hamilton v. Georgia Pacific Corp., 844 So.2d 400 (La.App. 1st Cir. 1977). The issue of whether or not he has carried this burden must be determined by examining the totality of the evidence, including both lay and medical testimony. Crawford v. Al Smith P & H Service, Inc., 352 So.2d 669 (La.1977).
Generally, the testimony of the claimant's treating physician is afforded great weight. Gowers v. Gour, 350 So.2d 935 (La.App. 2nd Cir. 1977), writ refused, 352 So.2d 1046 (La.1977). Where there is conflicting medical evidence, the court may accept the testimony of the treating physician over that of specialists who may have seen the claimant only briefly. Thompson v. Natchitoches Parish Hospital Service District, 365 So.2d 57 (La.App. 3rd Cir. 1978). Whether the evidence indicates that the pain is substantial enough to be disabling is a question of fact. The factual findings of the trial court will not be disturbed in the absence of evidence of manifest error. Cadiere v. West Gibson Products Company, Inc., 364 So.2d 998 (La.1978).
The evidence in the record before us amply supports the findings of the trial courts. Having found no manifest error, we affirm the determination by the trial court that plaintiff is not totally and permanently disabled. Since plaintiff has already received from defendant more than he was entitled to recover under the schedule of payments for his particular injury, the trial court properly refused to award any further disability payments.
Defendant contests the trial court's award of penalties and attorney's fees, contending that it acted reasonably in terminating plaintiff's compensation payments, since its decision was based on the medical report received from Dr. Lowrey. In the alternative, defendant argues that the benefits were terminated for less than sixty days, and therefore, under the provisions of LSA-R.S. 22:658; plaintiff is barred from recovery.
LSA-R.S. 22:658 provides in part:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within 60 days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within 60 days after receipt of such proofs and demand of therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty. . . together with all reasonable attorney's fees for the prosecution and collection of such loss . . ." *117 When an insurer has received proof of loss and has been served with a demand for payment of benefits due, but has refused to initiate such payment, penalties and attorney's fees may not be assessed until the sixty day period has run. Levine v. Liberty Mutual Insurance Company, 305 So.2d 665 (La.App. 3rd Cir. 1974); Antoine v. Houston Fire & Casualty Company, 232 So.2d 588 (La.App. 3rd Cir. 1970). However, if after demand is made and payments have begun, the insurer terminates them arbitrarily, capriciously, or without probable cause, a claimant does not need to make a second demand and wait an additional sixty days before becoming entitled to the penalty and attorney's fees. Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3rd Cir. 1976); Plaisance v. Collins Industries, Inc., 193 So.2d 816 (La.App. 1st Cir. 1966).
The determination of whether or not an insurer's action is arbitrary is made on the basis of the facts existing and known to the insurer at the time the decision to terminate payments was made. King v. Insurance Company of North America, 288 So.2d 878 (La.App. 3rd Cir. 1974). In the instant case, the record supports the trial judge's determination that the insurer acted without probable cause in fully terminating plaintiff's compensation benefits. Dr. Lowrey's report showed that plaintiff had a residual disability in his foot and that he was only being released to return to work on a "trial basis". Therefore, the decision of the trial court on this issue is affirmed as well.
Plaintiff additionally contends that he is entitled to recover for future medical, hospital and related expenses. This claim is without merit. Future medical expenses are not recoverable, there being no liability until such expenses accrue. Lewing v. Vancouver Plywood Company, Inc., 350 So.2d 1320 (La.App. 3rd Cir. 1977).
Finally, plaintiff alleges that certain court costs, amounting to $414.25, have not been paid by defendant. Among these expenses, he lists the examination by Dr. Joffrion at a cost of $148.00. This amount is not recoverable due to the fact that the examination was undertaken for the purposes of litigation and not treatment. However, the other costs listed by plaintiff, including the deposition of Dr. Joffrion, are recoverable. LSA-R.S. 13:4533; Basco v. State of Louisiana, Dept. of Corrections, 335 So.2d 457 (La.App. 1st Cir. 1976). Therefore, defendant is liable to plaintiff for $266.25 in additional court costs.
For the above and foregoing reasons, the judgment of the trial court is affirmed and all costs of this appeal are assessed equally against plaintiff and defendant.
AFFIRMED.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge, dissenting.
After reviewing the record and in particular the medical depositions, I believe the trial court and my brothers of the majority have erred seriously in not finding the plaintiff to be totally and permanently disabled. According to the testimony of Dr. C. W. Lowrey, the treating orthopaedic surgeon, Turner has a 30 to 40 percent permanent disability of his foot. This physician, who candidly admits that "I'm not that familiar with logging" (Lowrey Deposition, D-1, p. 13), says that Turner could return to logging. It seems obvious that a man with a severe disability to his foot would present a substantial danger to himself and others in this occupation. The trial court and the majority emphasized the testimony of Dr. Lowrey as the treating physician, but that doctor's opinion is equivocal. Among other observations, Dr. Lowrey says that ". . . anything that would thrust more weight on the forefoot would be a problem to him." (D-1, p. 22).
Dr. Don K. Joffrion, who examined plaintiff for purposes of litigation, stated that in his opinion as an expert orthopaedic, the plaintiff could not engage in logging because he would have considerable swelling and pain, and, in addition, plaintiff could not engage in any occupation which required long standing or walking. (Deposition *118 of Dr. Joffrion, P-9, p. 11). Dr. Joffrion, in contrast to Dr. Lowrey, testified that he is familiar with the duties of a logger. (P-9, p. 11).
When the present situation is considered in conjunction with the line of cases beginning with Phillips v. Dresser Engineering Co., 351 So.2d 304 (La.App. 3 Cir. 1977), the trial court clearly erred in failing to find that Turner is totally and permanently disabled, because he can only work in pain.
There is also serious doubt that Turner can obtain any other type of work. The expert in vocational rehabilitation, who testified, assigned Turner an I.Q. rating of 64, which indicates that he is actually retarded. Although he attended school through the seventh grade. Turner's academic attainment is in the second to fourth grade levels. His academic ability is described as being in the fourth percentile group, that is, 96 people out of 100 in the United States have a higher level of academic attainment than does Turner. This presents a very bleak outlook for Turner in his efforts to obtain some other job.
Dr. Hearn, the expert in vocational rehabilitation, noted that Turner could pump gas. However, Hearn added that someone else would be required to fill out credit card slips for him, because Turner's mathematical abilities are at a second grade level. It seems rather unlikely, if not impossible, that Turner could get a job at a service station.
Therefore, I believe that Turner falls into the same category as the plaintiff in Ashworth v. Elton Pickering, Inc. 361 So.2d 940 (La.App. 3 Cir. 1978), who was unable to work as a logger and also unable to do any other type of work. Turner is entitled to a judgment for total and permanent disability.
For these reasons, I respectfully dissent.