390 So.2d 1330 (1980)
Silton TURNER
v.
AMERICAN MUTUAL INSURANCE COMPANY.
No. 65636.
Supreme Court of Louisiana.
November 12, 1980.
Rehearing Denied December 15, 1980.
*1331 Jerold Edward Knoll, Knoll & Knoll, Marksville, for plaintiff-applicant.
Larry Stewart, Stafford, Stewart & Potter, Alexandria, for defendant-respondent.
DENNIS, Justice.[*]
The issue presented in this workers' compensation case is whether the plaintiff is unable "to engage in any gainful occupation for wages" within the meaning of La. R.S. 23:1221(2) (Supp. 1975) and thus should be awarded compensation for permanent total disability. The court of appeal, affirming the trial court, held that the plaintiff, a mentally retarded woodcutter whose right foot had been crushed, was not permanently disabled because he could still perform "some type of gainful employment." Turner v. American Mut. Ins. Co., 375 So.2d 113, 115 (La.App.3d Cir. 1979). We reverse and remand.
In Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980) we held that the odd-lot doctrine should be used as the guiding concept in determining whether an injured employee is unable "to engage in any gainful occupation for wages" and is thus totally and permanently disabled. La. R.S. 23:1221(2) (Supp. 1975). In the present case, the plaintiff's employment capabilities were severely restricted because of his mental and physical limitations, and the employer did not demonstrate the existence of an actual job in the employee's general locality at which he has a reasonable opportunity to be employed. Because the plaintiff established a prima facie showing of total and permanent disability, we reverse the holdings of the lower courts, but remand to allow the defendant a fuller opportunity to rebut by showing an actual job is available.
Silton Turner, a twenty year old black man, was employed as a sawhand for a logging contractor. His job required that he perform manual labor, including the operation of a power saw and, at times, a log skidder, in cutting and moving logs in the woods. On February 22, 1977, while riding on the front of a log skidder, plaintiff received serious injury to his right foot when the operator of the skidder raised the blade, pinning Turner's foot between the blade and the radiator of the skidder, breaking several bones. Turner was initially taken to Dr. LaCour in Oakdale and then transported to Rapides General Hospital where he was treated by Dr. Cedric Lowrey, an orthopedic specialist. After two operations conducted by Dr. Lowrey, plaintiff was ultimately released by the doctor with a residual disability of thirty to forty per cent in the right foot.
Turner was paid workers' compensation benefits until Dr. Lowrey notified the employer's insurer that he felt the plaintiff could resume work on a trial basis. Upon receiving this report, the insurer terminated compensation payments. Turner sued claiming that the payments were improperly discontinued because he was permanently disabled. The trial court found that Turner's disability could not be defined as permanent and total under La. R.S. 23:1221(2) as amended in 1975; the court of appeal affirmed. We granted certiorari to review the lower courts' statements and applications of the law to the evidence relative to the issue of permanent total disability.
Under the odd-lot test as announced in Oster v. Wetzel Printing, Inc., supra, an injured employee is entitled to total, permanent disability compensation if he can perform no services other than those which are *1332 so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist. This determination is made after scrutiny of the evidence of the worker's physical impairment as well as his mental capacity, education, and training. If the worker establishes that he falls into the odd-lot category, he is entitled to total, permanent disability compensation unless the employer or his insurer is able to show that some form of suitable work is regularly and continuously available to the employee within reasonable proximity to the worker's residence.
In applying this analysis to the present case, we find that the concrete evidence is virtually undisputed. Turner sustained fractures of the second and third metatarsals of the right foot with a dislocation of all tarsometatarsal joints. He was required to undergo two surgical operations and wear a cast on his leg. His second metatarsal achieved questionable healing, resulting in a precarious union that makes him much more susceptible to injury than a normal person. Approximately one year after the accident, it was determined that he had lost virtually all motion of his great toe and 50% of the motion of his other toes. Atrophy of his right calf muscles had decreased the size of his limb by one inch in circumference. His doctors concluded that the 30 to 40% disability of his foot, and its added thickness, would require him to wear mismatched shoes.
Turner began working at the age of fifteen and labored primarily as a log cutter. He worked briefly in cannery and as a combination truck loader and driver for a pecan company. He attempted to go back to work as a log cutter as his doctor advised. He quit after three or four hours, however, when his foot become swollen and painful. He has attempted to exercise his foot by walking, but he experiences pain after standing or walking for long periods. Turner testified that he cannot perform any job that requires such use of his injured foot. He conceded that he could drive an automobile with an automatic transmission by applying the brake with his healthy left foot, but he testified that he could not operate a standard transmission truck or skidder, which would require manipulation of the brake with his injured foot.
Doctor Lowrey, the orthopedist who treated and performed surgery on Turner, testified the employee could eventually return full time to the job of log cutter. The doctor acknowledged that his patient had a 30-40% disability of the foot and a precarious union of one bone which could develop into a pseudo-arthrosis. He also acknowledged that Turner's foot could be reinjured easily if it was jerked up or down. The doctor did not doubt that Turner experiences pain and has a stiff forefoot, but the physician thought that the condition would improve if Turner forced himself to walk on it. The doctor was of the opinion that Turner could not do work that required him to put a great deal of weight or pressure on his toes. Although the doctor confessed he was not too familiar with logging, he said he did not think it involved standing or pushing up on one's toes.
On the other hand, Dr. Joffrion, an orthopedist who saw Turner on one occasion for purposes of evaluation, testified that in his opinion the patient cannot perform the duties of a logger because he can no longer stand or walk for extended periods. According to the doctor, Turner's disability results from a permanent stiffness of the midfoot which, together with the malunion of one bone, alters the mechanics of the foot, and causes excessive force at the ankle and toe area. Dr. Joffrion testified that he was familiar with the physical requirements of the job of logger and that Turner could not perform them because his condition made prolonged walking, standing, stooping or climbing impossible. Consequently, he recommended that the plaintiff be given rehabilitation and training for a sedentary occupation.
George Hearn, PhD, an industrial psychologist and vocational rehabilitationist, testified that he interviewed Turner and gave him a battery of intelligence, achievement, aptitude and psychological tests. According to the tests, Turner has an intelligence *1333 quotient of 64, and has attained education grade levels of 4.6 in reading, 4.0 in spelling, and 2.3 in arithmetic. He is mentally retarded, quite limited in academic skills, and his eye-hand motor coordination is consistent with his level of intellect, his achievement and his experience. In the psychologist's opinion, however, Turner's job skills in these areas had not been further impaired because of the accident.
Over plaintiff's counsel's objection, Dr. Hearn was allowed to express his opinion of whether Turner can "work at any gainful occupation for wages" assuming that Turner has a "30 to 40 per cent impairment of function of his right foot as a whole; ... this limitation restricts him from doing work on his tip-toes; or in pushing up on his toes; ... he has good motion [in] his ankle in and out, ... up and down." The psychologist testified that, since Turner had driven an automobile to his office for his interview, the injured employee could also drive a pulpwood truck and a skidder. Dr. Hearn saw "no reason" why Turner could not perform assembly line work in a cannery or furniture factory, light janitorial or custodial work and a gasoline service station job which does not require him to handle money or credit cards. The vocational psychologist testified that the state employment office had informed him of job openings for woodcutters and state civil service light custodial workers. He also stated there were job opportunities at a cannery and a furniture factory. Dr. Hearn did not testify, however, as to whether these employers would hire Turner despite his mental and physical limitations or whether the jobs were near his residence. On cross-examination, in response to the direct question, "who has a job at this point, that would hire this man?", Dr. Hearn gave the qualified response that a cannery where Turner had worked before "should certainly consider hiring him, if it's the same kind of work, and under the assumption that he can do it."
Based on this evidence, the trial court found that Turner was not totally disabled because "he can perform work in the logging business as a truck driver and as operator of a skidder" as well as other occupations pointed out by the psychologist-vocationalist. The court of appeal held that the trial court was not manifestly erroneous in rejecting Turner's claim of total permanent disability because he failed to prove to a legal certainty and by a reasonable preponderance of the evidence that he is unable to pursue any type of gainful employment as a result of the injury. Turner v. American Mut. Ins. Co., 375 So.2d 113 (La.App.3d Cir. 1979).
The trial court and court of appeal, of course, did not attempt to decide the case in accordance with the odd-lot doctrine. Although we mean no criticism of their failure to do so, in the absence of an expression by this Court on the subject, the result reached below illustrates the dangers of a simplistic or mechanical application of statutory rules in the field of workers' compensation. Turner, a mentally retarded, unskilled laborer, who sustained a permanent 30-40% disability of his foot, was denied either permanent partial disability or permanent total disability benefits. Both lower courts seemed to reject the opinion of the one doctor who said Turner could return to the work in which he was engaged at the time of the accident. But they based their decisions largely on the testimony of the vocational psychologist, who, in essence, stated that there were jobs available at various places in the state which a person with Turner's disability could perform. Thus, the trial court and court of appeal never focused on the question of whether Silton Turner, considering both his physical and mental limitations, can successfully obtain and hold regular employment in actual jobs available to him within reasonable proximity to his residence.
Under the proper interpretation of La. R.S. 23:1221(2), as set out by the odd-lot doctrine, the plaintiff's evidence makes a prima facie case for his classification in that category. See Oster v. Wetzel Printing, *1334 Inc., 390 So.2d 1318 (La.1980). It is agreed by all concerned that he is mentally and intellectually unable to do any work outside of manual labor. The plaintiff's evidence shows that he cannot do work which requires prolonged standing, walking, stooping, or climbing. It was also shown that increased activity affecting the injured foot will aggravate the arthritic condition and accelerate its effects.
The evidence regarding the plaintiff's ability to operate a skidder or drive a truck was conflicting though the trial judge decided that Turner possessed such ability. No evidence was introduced, however, that would establish that such work was actually available, nor that any employer would hire a person in Turner's condition over healthy competitors. The record is devoid of evidence that Turner's employer offered to rehire him either in his old job or at lighter work, such as operating a skidder or a truck. Turner is obviously at a substantial disadvantage in such competition especially when all his prior jobs contained at least some required tasks which he can no longer perform.
Turner lives in the small town of Simmesport. It is unknown how many jobs there were available to the plaintiff before he was injured, considering his mental capabilities. There is also no indication of whether there are any opportunities within a reasonable area for a person who can drive a truck or operate a skidder, but who cannot do other work which often is combined with those activities. Ultimately, it has not been shown that there is an occupation available within a reasonable area in which Turner can work considering his physical disability, education, and mental deficiencies.
We believe that a remand in this case is appropriate. We only recently announced in Oster that the odd-lot doctrine would be used to determine the extent of a worker's disability. We did not remand in Oster because the evidence showed that the injured elderly bookbinder could not engage in gainful employment even if a suitable job existed. Since it is possible that an actual job in Turner's vicinity exists that might afford the plaintiff gainful employment, we feel that the defendant should be allowed an opportunity to make this showing. On remand the plaintiff also will be allowed to introduce further evidence to support his case under the doctrine.
If the employer is successful in rebutting Turner's prima facie showing of total disability, the trial judge should reconsider the appropriateness of compensation for partial disability under La. R.S. 23:1221(3). If it is found that Turner can return to gainful employment, though not to the same or similar work, then he would be entitled to an award of partial disability rather than the schedule loss under La. R.S. 23:1221(4)(g) and (o).
REVERSED AND REMANDED TO THE DISTRICT COURT.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., concurs in the result and assigns reasons therefor.
WATSON, J., recused.
LANDRY, J. ad hoc, dissents.
MARCUS, Justice (dissenting).
The court of appeal in affirming the trial court found that Turner was not totally disabled because he could perform "some type of gainful employment." I agree. Hence, plaintiff is partially disabled and should be paid disability benefits in accordance with the schedule of payments set forth in La. R.S. 23:1221(3). I respectfully dissent.
BLANCHE, Justice (concurring).
I agree with the majority's remand in order to determine whether this plaintiff is totally and permanently disabled. I will now acquiesce in the majority's application *1335 of the "odd-lot" doctrine in this jurisdiction although I have previously indicated my disagreement with incorporating this doctrine into our law. See my dissent in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (1980).
NOTES
[*] The Honorable Paul B. Landry, Jr. participated in this decision as an Associate Justice pro tempore.