NORRIS, Judge.
In this workmen’s compensation suit, Ar-netta Poland, who was paid disability benefits from November 24, 1977, until September 7, 1979, when it was determined by three orthopedists that he could return to work, appeals a judgment rejecting his demands for total and permanent disability benefits contending that he is unable to work because of pain and other related difficulties.
Plaintiff was injured during the course and scope of his employment with BC&S Wood Company as a result of an accident involving a chain saw resulting in the amputation of three toes, including the great toe of his right foot and a soft tissue injury to his right knee. Defendant, American Mutual Insurance Company, was the workmen’s compensation carrier for BC&S at the time of plaintiff’s injury and paid plaintiff benefits in the amount of $12,025 based on 100 per cent loss of each of the three toes or a 20 per cent permanent partial impairment and loss of physical function of the right foot and a five to seven per cent disability to the right knee.
The trial court found that plaintiff was able to return to work and awarded benefits of $12,025 based on the schedule loss of the three toes and the injury to the knee. It is apparent from the Trial Court’s Reasons for Judgment that it based its conclusions that plaintiff could return to work solely on the testimony of three orthopedists, discounting the testimony of a podiatrist and four lay witnesses who testified on behalf of plaintiff.
The record reflects that plaintiff, a 44 year old woodcutter of limited educational background, while at work on November 24, 1977, injured his right foot and knee as a result of the accident with the chain saw. He was first treated by Drs. Willis and Rush who performed the amputations and thereafter referred him to Dr. Austin W. Gleason, an orthopedic surgeon in Shreve *1294 port, who initially saw plaintiff on June 21, 1978. Dr. Gleason confirmed plaintiff’s injury and recommended that he obtain a work boot or shoe with a moulding to partially replace the amputated members. Dr. Gleason noted that plaintiff complained of pain on each visit and testified that a person with this type of injury will possibly tend to favor the dismembered part of the body which may result in pain, discomfort, or strain as well as the possible development of neuromas and tenderness, both permanent conditions. Dr. Gleason further noted complaints of trouble with the lower back for which plaintiff was treated by his associate, Dr. Lewis C. Jones. Dr. Jones noted in his office notes that plaintiff had reported numb aching pain down the outside of the lower right extremity and felt this problem was caused by degenerative disc disease at the L-5 level. Dr. Gleason testified that it was possible that a degenerative disc disease could be aggravated by this type of foot injury. Dr. Gleason also noted plaintiff’s complaints of his knee giving way with the bearing of weight and of his being unable to stand on his foot for any length of time because of pain in his toes. He noted that the soft tissue injury to the right knee caused scarring which could result in permanent weakness of the knee because of a weakened muscle. His testimony was further that the type of injuries which plaintiff suffered would affect him in his occupation since he would lose some power and agility while walking on uneven ground and in performing almost any activity that requires power in his foot. This witness last saw plaintiff on September 18, 1978, when he discharged him. It was Dr. Gleason’s impression that plaintiff could return to work with the specially designed work boot.
Dr. Clinton G. McAlister, another orthopedic surgeon in Bossier City, saw plaintiff between September 13,1978, and November 8, 1978. He too noted plaintiff’s complaints of pain and stated that his examination results were consistent with the complaints of plaintiff regarding persistent pain, inability to stand or walk without difficulty, numbness and the weakness in his leg. At the time he saw plaintiff he stated he would expect these complaints to subside, but that it was possible plaintiff could still have them further admitting that the dismemberment of that portion of the foot would cause some degree of difficulty in plaintiff’s ability to work and walk. He confirmed the degenerative disc disease and admitted it was possible that plaintiff’s injury could place certain strain and stress on other parts of the body because of overcompensation attributable to the foot injury. Dr. McAlister encouraged plaintiff to increase his activities; and noted that after plaintiff had attempted to return to work unsuccessfully, he felt that plaintiff was difficult to rehabilitate. Medically, he saw no reason why plaintiff could not be rehabilitated and agreed with Dr. Gleason that plaintiff could return to work from a purely objective standpoint.
Plaintiff was referred to Dr. Baer I. Rambach by American Mutual for evaluation on January 18,1979, which was his only contact with plaintiff. He noted plaintiff’s injuries and assigned to him a 100 per cent loss of each of the three amputated toes resulting in a 20 per cent permanent partial impairment and loss of physical function of the right foot and a five to seven per cent disability to the right knee. He thought that plaintiff’s complaints were overexag-gerated and that if plaintiff were motivated to return to work he should be able to do so even though he may be experiencing some discomfort.
Dr. Howard L. Chapman, a podiatrist who treated plaintiff from July 2, 1979, through the time of the trial, maintained throughout his testimony that plaintiff was disabled and totally incapable of doing physical work that requires the use of his right foot either in standing or walking because he has no balance in that foot. He constructed and fitted plaintiff with an arch support. It was also stated by Dr. Chapman that the pain in the leg or back would be attributable to the abnormal positioning of the foot. He testified to plaintiff’s extreme sensitivity at the tip of the great toe. He considered amputation neu- *1295 roma a diagnostic possibility and recommended consultation with a neurosurgeon which had not occurred at the time of his deposition.
It should be noted that the trial court had no opportunity to observe any of the medical witnesses because Drs. Gleason, McAlis-ter, and Chapman’s testimony from an earlier Federal court trial was introduced into evidence. Dr. Chapman’s deposition of September 2, 1980, and the medical report of Dr. Rambach were the only other medical evidence presented.
Plaintiff sought at trial to corroborate his complaints of persistent pain which rendered him unable to work by offering his own testimony and the testimony of two fellow workers as well as of his wife. In summary, each witness’ testimony tended to corroborate the assertions of plaintiff that he was in constant pain and could not physically work at his former job or as a manual laborer for a construction company even with the use of a specially fitted shoe device. Each of the witnesses who had observed plaintiff in his two attempts to return to work testified that he was in pain, had difficulty walking and could not complete a full day’s work without sitting down to rest. Plaintiff’s wife testified to his suffering pain and his inability to engage in physical activities around the home. All of the lay testimony was to the effect that plaintiff was a good worker prior to the accident but that post accident he worked slower and had less stamina. None of these lay witnesses, except plaintiff, were cross examined by defendant nor did defendant present any witnesses at trial to refute the lay testimony.
The deposition of Sam Pullig filed into evidence revealed that he is Secretary of BC&S Wood Company and that plaintiff was employed by his company when injured on the job. He further testified that the company has no job available for plaintiff that would not require physical labor.
In order for a claimant under the Louisiana Workmen’s Compensation law to prevail, he must first establish that his injury occurred as a result of an accident arising out of and in the course of his employment. Compensable disability only results from a work related accident. La.R.S. 23:1031; Simpson v. S. S. Kresge Co., 389 So.2d 65 (La.1980). In the instant situation, there is no question but that the plaintiff’s injury is work-related.
Therefore, the primary issue to be determined is whether or not the trial court erred in failing to find plaintiff totally and completely disabled within the meaning of La.R.S. 23:1221 and the applicable jurisprudence interpretating its intent.
It is a well settled principle of law that factual findings of the trial judge will not be disturbed in the absence of evidence of manifest error. Arceneaux v. Dominque, 365 So.2d 1330 (La.1979). Since the trial judge is in the best position to determine the credibility of the witnesses, his fact findings are entitled to great weight. Martin v. Coral Gables Academy and Institute of Reading, Inc., 369 So.2d 255 (La.App. 4th Cir. 1979) writ denied, 371 So.2d 1344 (La.1979). Thus, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Moss v. Security National Insurance Co., 350 So.2d 247, (La.App. 3rd Cir. 1977) writ denied, 352 So.2d 239 (1977). However, an appellate court is not required by the manifest error principle to affirm a trier of fact’s refusal to aceept as credible, uncontradicted testimony or greatly preponderant objectively corroborated testimony where the record indicates that there was no sound reason for the rejection and where the finding was reached by overlooking applicable legal principles. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979).
The plaintiff asserts that the trial court erred in failing to find him permanently and totally disabled and alternatively that the trial court erred in its failure to apply the odd lot doctrine to plaintiff’s case.
In Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980), the Supreme Court held that the odd lot doctrine should be utilized by the courts as the guiding concept in determining whether an injured employ *1296 ee is “unable to engage in any gainful occupation for wages,” and is thus permanently and totally disabled. La.R.S. 23:1221(2).
Amplifying further its mandate in Oster, the court in Turner v. American Mutual Insurance Co., 390 So.2d 1330, 1331 (La.1980), stated:
Under the odd-lot test as announced in Oster v. Wetzel Printing, Inc., supra, an injured employee is entitled to total, permanent disability compensation if he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist. This determination is made after scrutiny of the evidence of the worker’s physical impairment as well as his mental capacity, education, and training. If the worker establishes that he falls into the odd-lot category, he is entitled to total, permanent disability compensation unless the employer or his insurer is able to show that some form of suitable work is regularly and continuously available to the employee within reasonable proximity to the worker’s residence.
In Turner, the Supreme Court reversed the lower courts’ holdings that the plaintiff, a mentally retarded woodcutter whose right foot had been crushed in a work related accident was not permanently disabled. In that case, plaintiff’s benefits were terminated when his physician notified the employer’s insurer that he could resume work on a trial basis. Finding that the trial court and the court of appeal had not attempted to decide the case in accordance with the odd lot doctrine and noting that neither court had focused on the question of whether plaintiff, considering both his physical and mental limitations, can successfully obtain and hold regular employment in actual jobs available to him within reasonable proximity to his residence, the court remanded the case to determine if a suitable job existed. In that case, the court found that plaintiff’s evidence had made a prima facie case for his classification in the odd lot category.
Following Turner, the Supreme Court again addressed in Lattin v. HICA Corp., 395 So.2d 690, 693 (La.1981), the applicability of the odd lot doctrine to a workmen’s compensation claimant who suffered an injury to his right foot. Noting that the odd lot doctrine applies to a worker who cannot return to any gainful employment without suffering substantial pain, the court further addressed the applicability of this doctrine stating:
Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot jn the labor market, that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonable stable market for his services does riot exist. An odd lot claimant need not be absolutely helpless to qualify for total! disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor m'arket, he has made out a prima facie caste for classification in the odd lot category. This satisfies his burden of proving i that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence.
The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his , injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant’s | pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market,; he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. On the other hand, if a wterker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity to *1297 perform other jobs which are available, he should be considered partially disabled.
Thereafter, the case was remanded to the district court to allow both parties to present additional evidence in light of the newly adopted standards.
In the instant case, plaintiff testified that he had pain in his foot, leg and back when inactive, which increases upon exertion, standing or walking. He testified that his two attempts at working were unsuccessful because of pain as well as lack of balance and stamina. He also testified that his attempts to work after the accident required the help of fellow workers. This evidence was corroborated by the testimony of his fellow workers, wife and Dr. Chapman. Although all three orthopedists believed plaintiff could return to work provided he wore a special boot or shoe, they had not seen plaintiff in nearly two years prior to trial. All found objective medical indications that could support his claim of pain and disability at time of trial. Thus, plaintiff’s complaints at time of trial stand virtually uncontradicted.
We consider the evidence clearly establishes a prima facie case for his classification in the odd lot category as plaintiff’s pain and disability appreciably limit the types of work available to him and greatly diminish his ability to compete in the labor market. Under the odd lot doctrine standards adopted by the Supreme Court in Oster, Turner, and Lattin, supra, which we note were not available when this matter was tried, the defendant should be given the opportunity to reduce the award of plaintiff’s total and permanent disability to permanent and partial disability by presenting evidence that some form of gainful occupation is regularly and continuously available to plaintiff within a reasonable proximity to his residence. Accordingly, the judgment of the trial court must be set aside and the case remanded to allow both parties to present additional evidence in light of the newly adopted standards.
Our ruling requiring remand pretermits the need for discussion of penalties and attorneys fees.
For the above reasons, the judgment of the district court is set aside and the case remanded for further proceedings consistent with this opinion.