416 So.2d 327 (1982)
Rayfield WHITE, Sr.
v.
JOHNS-MANVILLE SALES CORPORATION, a/k/a Johns-Manville Products Corporation.
No. 5-242.
Court of Appeal of Louisiana, Fifth Circuit.
June 8, 1982.
Rehearing Denied July 13, 1982.
*328 Gertler & Gertler, David Gertler, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Thomas M. Nosewicz, New Orleans, for defendant-appellant.
Before BOUTALL, DUFRESNE and GRISBAUM, JJ.
GRISBAUM, Judge.
This is a workers' compensation suit in which plaintiff, Rayfield White, Sr., was awarded benefits for permanent total disability pursuant to La.R.S. 23:1221(2) in the amount of One Hundred Forty-Eight and no/100 dollars ($148.00) per week commencing June 30, 1980, with legal interest thereon from date due until paid. Past due medical expenses in the amount of One Thousand Eight Hundred Thirty-Three and 10/100 dollars ($1,833.10) and future medical expenses were also awarded by the trial court. From this judgment, defendant, Johns-Manville Sales Corporation, appeals claiming the trial court erred in (1) awarding any benefits to plaintiff because he did not suffer a compensable occupational disease under Louisiana Workmen's Compensation Act, La.R.S. 23:1031.1; in (2) finding plaintiff is in the "odd-lot" category and denying defendant an opportunity to prove that substantial employment opportunities exist for plaintiff; and finally in (3) determining the date of compensation from the date the disability was discovered, June 30, 1980, rather than from the date of last injurious exposure which would be 15 to 20 years prior to the date in which the alleged disease manifested itself.
We affirm the trial court's judgment.
The record reflects that Rayfield White, Sr. at the time of trial was a 53 year old man with a fifth grade education who had worked for Johns-Manville Sales Corporation (hereinafter known as Johns-Manville) in Marrero, Louisiana for approximately 33 years (from June 1948 until June 1980). During those years he worked in various departments of Johns-Manville including the transite pipe plant where he was exposed to asbestos fibers and silica, the asbestos shingle plant where he was exposed to asbestos fibers, and the roofing plant where he was exposed to silica. During his years of employment he used respirator masks intermittently. After experiencing shortness of breath in May 1980, Mr. White was examined by Dr. Morton Brown who performed chest X-rays. According to Dr. Brown, Mr. White's X-rays indicated evidence of emphysema, interstitial reaction, and pleural plaques along the chest walls. In June 1980, Mr. White was hospitalized for five days to undergo further testing by Dr. Brown. Dr. Brown diagnosed Mr. White's condition as interstitial fibrosis (commonly known as asbestosis when asbestos is the substance causing the fibrosis) and found that Mr. White also had pleural plaques along the chest walls. Dr. Brown recommended that Mr. White not return to work. Mr. White stopped working in July 1980. In August 1980, Mr. White was hospitalized after complaining of chest pains. Dr. Charles Steiner, a cardiologist, diagnosed Mr. White's condition as primary cardiomyopathy, a disorder of the heart muscle wherein the heart muscle is dilated. After treatment of this condition, Dr. Steiner set no limitations on Mr. White's activities.
At the request of Johns-Manville, Mr. White was examined by Dr. Hans Weill in November 1980. Dr. Weill found that Mr. White had pleural plaques along the lateral chest wall and diaphragmatic plaques. These plaques were both calcified and uncalcified. Dr. Weill attributed these plaques to asbestos exposure. However, Dr. Weill did not find evidence of interstitial fibrosis (asbestosis).
Meanwhile Mr. White had made demand for workmen's compensation payments from Johns-Manville in August 1980. When this demand was refused by Johns-Manville, he filed suit on September 11, 1980.
*329 The central issue is whether Rayfield White is unable "to engage in any gainful occupation for wages" within the meaning of La.R.S. 23:1221(2) (Supp.1975) and therefore should be awarded compensation for permanent total disability. In order to answer this question this court must decide:
(1) Whether Rayfield White has interstitial fibrosis (asbestosis);
(2) If White does have interstitial fibrosis, whether plaintiff has made a prima facie case that he should be included in the "odd-lot" category;
(3) If plaintiff has made out a prima facie case that he fits within the "odd-lot" category, may this case be remanded in order that defendant, Johns-Manville, may present evidence that work is available to plaintiff; and finally,
(4) What is the appropriate time for determination of the rate of compensation for recovery benefits under the Louisiana Workmen's Compensation occupational disease statute, La.R.S. 23:1031.1.
After listening to the testimonies of both plaintiff's and defendant's experts, reading depositions of defendant's experts, and reviewing hospital and Johns-Manville's medical records of Mr. White which were introduced into evidence, the trial judge answered the first issue by concluding that Rayfield White was suffering from asbestosis, an occupational related disease whereby the inner lining of the lungs scars due to exposure to asbestos dust. In addressing the first issue of whether plaintiff suffers from the occupational disease of asbestosis, we are guided by Canter v. Koehring Co., 283 So.2d 716 (La.1973) which sets forth the standard by which this court must review the trial judge's factual finding that Mr. White suffers from asbestosis. The court in Canter, 283 So.2d 716, 724 stated:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error."
According to Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978), "manifestly erroneous" means "clearly wrong." After review of the entire record, we do not find the trial judge's conclusion that Rayfield White is suffering from asbestosis as clearly wrong. It is true that there is conflicting testimony in which the trial court chose to believe one expert's opinion over another expert's opinion as to Mr. White's lung condition. Dr. Morton Brown, an expert in pulmonary diseases, testified that Mr. White's X-rays revealed clear evidence of interstitial fibrosis. Based on the existence of the fibrosis, the pleural plaques, and Mr. White's history of exposure to asbestos, Dr. Brown made a diagnosis of asbestosis. Moreover, Dr. Brown's testimony is not the only evidence upon which the trial court could have based its finding that Mr. White had contracted asbestosis. Plaintiff introduced into evidence a report from a radiologist from West Jefferson Hospital which stated:
"There are chronic lung changes noted with calcification of the left diaphragm. The possibility of pneumoconiosis should be considered." (Plaintiff's Exhibit # 10)
Also important are the notations of Johns-Manville's own company physician. (Defendant's Exhibit # 1) The employees of Johns-Manville were annually sent for physical examination which included chest X-rays read by Johns-Manville's physicians. In 1962, Mr. White was X-rayed at Johns-Manville; the notation "slight reticulation suggestive of early asbestosis" was written on Mr. White's medical report. This medical record made in 1962 by Johns-Manville's own physician finding "slight reticulation suggestive of early asbestosis", as well as Dr. Brown's testimony and the findings of the radiologist from West Jefferson Hospital, provide a foundation upon which to base the trial court's conclusion that Mr. White has asbestosis, and, thus, this conclusion is not "clearly wrong."
Defendant Johns-Manville claims that the trial court has ignored its expert, Dr. Hans *330 Weill, a specialist in pulmonary diseases, especially asbestosis related diseases, who specifically found no evidence of pulmonary fibrosis (asbestosis), and the depositions of Dr. Steiner who found Mr. White suffered from cardiomyopathy and put no limitation on Mr. White's activity and Dr. Grimstad, a specialist in internal medicine with a subspeciality in pulmonary diseases, who never personally saw Mr. White but evaluated his pulmonary function tests and found that Mr. White was normal. We disagree. The trial court has merely performed the common functions of a trier of fact by evaluating the conflicting testimony and by making determinations as to the weight to be given to evidence and the credibility attributed to the testimony of the witnesses since the trier of fact is in the best position to evaluate witnesses and other evidence. The trial court has permissibly resolved in plaintiff's favor the conflicting evidence as to whether asbestosis is present. Billiot v. Bourg, 338 So.2d 1148, 1151-52 (La.1976). Moreover, we cannot find, after careful review of the entire record, that this determination is clearly wrong.
This brings us to a discussion of whether plaintiff has made out a prima facie case that he fits within the "odd-lot" category as set forth by the Louisiana Supreme Court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). Under the odd-lot doctrine a claimant may be considered totally disabled if due to his injury he is considered `odd-lot' in the competitive labor market. This means that although he may be capable of holding various jobs from time to time, the kind of work he can perform is so limited in quality, dependability, or quantity that a reasonable stable market for his work does not exist. Oster, 390 So.2d 1318, 1323-24 explained the test for determining whether a claimant fits within this category in the following manner:
"... [H]e must show that because of his physical impairment, mental capacity, education, training, age, availability of employment in his area, and any other relevant factor, that he `cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity.' Reese v. Preston Marketing Assoc., 274 Minn. 150, 142 N.W.2d 721, 723 (1966). If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with `a gainful occupation.'"
The trial court applied the above test to Mr. White's situation. He was impressed that Mr. White was a 53 year old man with only a fifth grade education who, during his entire work history, had only performed jobs requiring physical labor. These individual characteristics of Mr. White, coupled with the fact that he was found to have asbestosis which can be debilitating and progressive in nature and pleural plaques which increase one's risk to cancer and mesothelioma, prompted the trial court to find that plaintiff had made a prima facie case for classification in the odd-lot category. We cannot find that the trial court was clearly wrong in the categorization. We, too, conclude that Mr. White has established a prima facie case for oddlot categorization. The burden then shifts to Johns-Manville to show that jobs are available to provide Mr. White with "a gainful occupation." Oster, supra.
At the trial the defendant, Johns-Manville, failed to rebut that Mr. White is permanently disabled to engage in a gainful occupation for wages by introduction of evidence as to job opportunities available to Mr. White. Defendant requests this court to remand this case on this issue to allow it *331 opportunity to present testimony of a qualified vocational rehabilitation expert who could demonstrate that work opportunities are available to Mr. White.
La.C.C.P. Article 2164 is the authority for an appellate court to remand an action to the trial court for consideration. This article states in part:
"The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal ...."
The jurisprudence has interpreted La.C.C.P. Article 2164 to empower an appellate court to remand a case for the introduction of additional evidence to prevent a miscarriage of justice. However, such a procedure should be sparingly exercised. Herbert v. Traveler's Indemnity Co., 255 La. 645, 232 So.2d 463, 464-65 (1970); Jones v. LeDay, 373 So.2d 787, 789 (La.App. 3rd Cir. 1979); Bidwell v. Binnings Construction Co., 228 So.2d 240, 242 (La.App. 1st Cir. 1969).
To support its request for a remand, defendant cites Turner v. American Mutual Insurance Co., 390 So.2d 1330 (La. 1980). Turner, however, can be distinguished. In Turner, the "odd-lot" categorization became important after the trial on the merits. The Supreme Court remanded Turner two days after its decision in Oster which adopted the odd-lot doctrine. In the instant case, the odd-lot doctrine had been established for over a year when this case went to trial. Defendant should have been fully cognizant that the odd-lot status of Mr. White would be an issue in the case. Ample opportunity was afforded defendant to present evidence since the trial was continued twice as an open case. Defendant was also given opportunity after trial to submit a post-trial memorandum on the issue of the odd-lot doctrine, but it failed to avail itself of that opportunity. Defendant cannot now be allowed a remand to present further evidence that it could have presented at trial had it chosen to do so. See B. Stern Co. v. Perry, 246 So.2d 246, 250 (La. App. 1st Cir. 1971). Accordingly, we deny defendant's request for a remand on the issue of job availability for Mr. White.
The last issue to be considered is the correct compensation rate to be awarded to plaintiff. Defendant contends that the trial court erred by utilizing the compensation rate at the date of disability, which was June 1980. Defendant argues that the proper rate to be used is the rate in existence at the date of "injury" or last injurious exposure. This date would be Mr. White's last exposure to the conditions causing his occupational disease.
After analysis of the occupational disease provision, La.R.S. 23:1031.1 and occupational disease cases, we have come to the conclusion that the date of disability is the correct time in which to determine the compensation rate. Prior to 1952, Louisiana's Workmen's Compensation Act recognized recovery for injury caused by an "accident." Louisiana courts interpreting the Act denied recovery when the plaintiff's affliction was attributable to an occupational disease rather than an "accident." Malone & Johnson, Workers' Compensation, § 219 in La. Civ.L.Treatise 458-462 (2nd ed. 1980). They noted a distinction between the onset of an occupational disease and a single event accident or injury. Occupational diseases are not the result of any one single eventthere is no "accident" or "injury" in the typical sense of these terms. Instead, an occupational disease is the result of a series of events often imperceptible in nature which are eventually evidenced in the manifestation of a disability. See Cannella v. Gulf Refining Co. of La., 154 So. 406 (La.App.Orl.1934); Freiss v. Lone Star Cement Co., 161 So. 209 (La.App.Orl.1935); Glover v. Fidelity & Casualty Co., 10 So.2d 255 (La.App. 2nd Cir. 1942). Moreover, the distinction between an occupational disease and an "accident" led the Louisiana legislature in 1952 to enact an occupational disease provision, La.R.S. 23:1031.1; thus, for purpose of Louisiana's Workmen's Compensation Act, an occupational disease is not the same as an "accident." The time, therefore, for determining the compensation rate for an occupational disease should not necessarily be analogized to the time for determining the compensation rate for an accident.
*332 In accident cases the date of injury can be pinpointed. However, an occupational disease is not an "injury" that is susceptible of such precise determination since occupational diseases in general are progressive diseases that develop over a long period of time. The symptoms of an occupational disease usually appear gradually with the victim's condition becoming worse over time. It increases almost imperceptibly as time goes on until finally the point of disability is reached. Moreover, the exact date for the inception of the disease is medically indefinable since there is no single moment of sudden injury as contrasted with the date of manifestation which can be pinpointed and therefore lends itself to less speculation. Malone & Johnson, Workers' Compensation, supra § 219. According to Cannella, 154 So. 406, 408:
In occupational disease, any one exposure is inconsequential in itself, but the continual absorption is the factor which brings on the disease. In such cases, he can be held injured only when the accumulated effect of the deleterious substances manifest themselves. (Emphasis added)
Thus the time of the manifestation of the disease is logically the correct time in which to award compensation. The trial court did not err when it awarded Mr. White One Hundred Forty-Eight and no/100 dollars ($148.00) per week, the compensation rate at the time of disability, i.e., when the disease manifested itself.
In summary, this court finds that the trial court was not clearly wrong in finding that Rayfield White had asbestosis thus there has been no manifest error warranting a reversal of this conclusion. We also find that Mr. White has made a prima facie case that he fits within the odd-lot category set forth in Oster and that defendant, Johns-Manville Sales Corporation, has not carried its burden of showing there are steady jobs available to plaintiff. Therefore, we hold that the plaintiff is entitled to an award of total permanent disability benefits. The correct compensation rate for purposes of the occupational disease provision of the Louisiana Workmen's Compensation Act is at the time of disability; i.e., the time the disease manifests itself which in this case would be June 30, 1980.
For the reasons assigned, we affirm the judgment of the trial court against defendant, Johns-Manville Sales Corporation, and tax Johns-Manville Sales Corporation with all costs of these proceedings.
AFFIRMED.