SHORTESS, Judge.
Brenda Lee Ballard (plaintiff), brought suit against Younger Transportation, Inc., her employer, for workers’ compensation benefits, alleging that she became totally and permanently disabled from the performance of her trade after sustaining an injury while on the job. Plaintiff was employed by defendant as a “hot-shot” driver and sustained an injury to her back while lifting the tailgate of her truck on February 7, 1981.
The trial court found plaintiff to be totally and permanently disabled under the odd lot doctrine, found that defendant was arbitrary, capricious and without probable cause in its termination of payments of benefits to her, and awarded compensation, penalties and attorney fees. Defendant appealed, assigning as error the trial court’s application of the odd lot doctrine and the award of penalties and attorney fees.
A hot-shot driver is a courrier, hired to drive a truck and deliver supplies and equipment as directed. The drivers accept calls from a dispatcher and are expected to make deliveries ranging from as short as ten miles to overnight trips to other states. The driver only drives to the destination; he does not load and unload the heavier supplies being delivered. We note, however, that plaintiff stated that “we were told it was best if we did help.” However, the basic physical functions required to complete the job appear to be only those incident to driving a vehicle.
Plaintiff testified that upon being injured, she experienced a sharp pain with “burning” and “stiffness” between her shoulder blades, and her back, and in her legs. She claims she is now totally incapable of carrying on the activities she enjoyed before the accident such as playing ball, mowing the grass, going fishing and cleaning the house. Her pain is exacerbated by holding one position for a long time, such as lying down or standing. Plaintiff’s roommate, Brenda Allen, corroborated plaintiff’s complaints of pain after the accident and her resultant inactivity.
The first physician seen by plaintiff after her accident was Dr. Melvin Robinson, plaintiff’s family physician. She saw him for examinations on February 9, 13, 20, March 12 and 27, 1981. Dr. Robinson’s examinations revealed mid-back strain with upper lumbar and lower thoracic strain. He also found that she was experiencing right sciatica pain and her straight-leg-raising tests were positive bilaterally. Dr. Robinson noted tenderness and spasm extending down the right sciatic nerve. However, he found no bony injury and no narrowing of disc spaces. He treated her with muscle relaxants and pain relievers and referred her to Dr. Willard Dowell, an orthopedic surgeon.
Dr. Dowell’s examination on April 6, 1981, revealed tenderness to the right of plaintiff’s lumbosacral joint and positive straight-leg-raising tests. He diagnosed a sprain of the lower back with a possible disc problem, but his x-rays of the lumbo-sacral region revealed no evidence of bony injury. On August 13, 1981, plaintiff was again seen by Dr. Dowell. He noted that she had complaints in more areas than before; most notably, tenderness in the dor-solumbar region rather than the lumbo-sacral region. He repeated his x-rays and again found them negative and felt that her shoulder area pain was unrelated to her back problem. Dr. Dowell did note that she did have weakness in her big toe extensor and loss of sensitivity to a pin prick test. He’found it inconsistent with her other complaints that she also experienced pain when performing a leg maneuver used to detect hip disease.
Plaintiff was then referred to Dr. James A. Poche, a neurosurgeon, who examined her on September 26, 1981. He noted in his report that plaintiff complained of pain *596 to the posterior section of her right leg and noted a limp favoring the right leg. He noted positive results on the right to the straight-leg-raising tests he performed. Dr. Poche performed a myelogram and found a bulging disc at L-5/S-1 level. On October 5, 1981, he performed a lumbar lamenectomy on plaintiff. His status report was entered as a joint exhibit at trial and reveals that plaintiff was doing well on December 7, 1981, and on February 2, 1982, he reported that she was “doing fine” and discharged her from his care with a permanent lifting restriction of thirty pounds.
Plaintiff next saw Dr. Robert Hanchey, a neurosurgeon, in March of 1982. His report and deposition were entered at trial, and both are entirely unfavorable to plaintiff. From her description of her pain, he called it “diffuse,” saying that pain resulting from a disc problem is usually well defined and consistent and that her descriptions were consistent with it being “hysterical” (psychological). He noted that she complained of her legs giving out and found this unusual when not accompanied by pain. He conducted a heel-toe walking examination which indicated non-physiologic pain, and got a positive result to the straight-leg-raising test when she was lying down, but a negative result when he had her sit up and perform the same test without her knowing she was performing that test. Dr. Hanchey found all of her maneuvers exaggerated and found no functional disability. He also found no spasm in his examination. His report notes that he thinks that the best way for her to recover from her pain is to end her lawsuit.
Plaintiff saw Dr. Edward S. Connally, an orthopedic surgeon, on April 8, 1982, primarily complaining of low back pain with some upper back pain between her shoulder blades. He noted in her x-rays a narrowing at the C-5/C-6 level and said this is usually attributable to a disc problem; however, chances are it pre-existed the February, 1981, trauma. His straight-leg-raising test was conducted to 80° bilaterally, a finding he considered negative. He found a 10% disability, which he considered “no functional disability.” Dr. Connally noted that it is unusual to have pain first in the cervical area and then moving down to the lumbar area. He said plaintiff does not have the symptoms of a ruptured cervical disc.
Dr. John G. Andrew, an orthopedic surgeon in Houston, saw plaintiff on May 13, 1982, and she had no pain on bending or flexing her lumbar spine, no spasm, no tenderness and no neck complaint through a full range of motion. His straight-leg-raising tests were negative. He related her shoulder pain to muscle strain, and found no functional disability.
None of these physicians testified at trial. Their depositions were entered in lieu of testimony.
Dr. Edward Gavin, a chiropractor, did testify at. trial. He first saw plaintiff on August 19,1982, and treated her at approximately 26 visits through September 14, 1982. He found spasm in the muscles of the cervical, thoracic and lumbar spine, a positive straight-leg-raising test at 65° and some spurring of the vertebrae at C-5/C-6 which he attributed to an old disc injury. In his opinion, her injuries were a result of the accident, and he classified plaintiff as totally disabled at the time of trial. He recommended she should stay at home, rest and not do any work.
The issue of pain experienced by a claimant seeking compensation benefits is a question of fact to be resolved by the trier of fact on the basis of the preponderance of the medical and lay evidence. Dauzat v. Gregory and Cook, Inc., 454 So.2d 807 (La.1984): Smith v. Union Underwear, Inc., 457 So.2d 248 (La.App. 3rd Cir.1984). When the factual issue is the severity of pain suffered by the claimant, the trial court’s conclusions must be based on its evaluation of the claimant’s testimony because in the final analysis the plaintiff is the only one capable of describing his pain. Smith, 457 So.2d at 250; Kraemer v. Louisiana Power and Light Company, 393 So.2d 346 (La.App. 1st Cir.1980). The factual conclusion reached by the trial *597 court that plaintiff suffers substantial pain is not clearly wrong and will not be disturbed on appeal. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979).
However, to qualify for compensation benefits under the odd lot doctrine, a claimant must also prove that because of his physical impairment and other factors, such as mental capacity, education and training, he can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist. Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980); Shatoska v. International Grain Transfer, Inc., 430 So.2d 1255 (La.App. 1st Cir.1983).
After reviewing the testimony we are not at all convinced that plaintiff has shown she “can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist.”
Lorettarea Cayard testified at trial as a vocational rehabilitation expert. She was of the opinion that plaintiff was capable of returning to gainful employment but that her attitude was that she did not wish to return to work. Cayard thought plaintiff would be able to return to her duties as a hot-shot driver and through her testimony demonstrated a good understanding of the duties of a hot-shot driver. She reported that this job was available to plaintiff at all times during her counseling of plaintiff but that plaintiff did not seem to want to discuss going back to work when she talked with Cayard.
Plaintiff is a high school graduate who held jobs such as department store cashier and meat packing plant worker before her accident. She felt she could not resume these jobs, but we note the depositions of the three orthopedists who saw plaintiff after the surgery and found little, if any, functional disability. The trial court erred in finding plaintiff totally and permanently disabled under the odd lot doctrine without more proof of the limitation of her services in quality and dependability, and the existence of reasonably stable markets for those services.
Once the worker establishes that he falls into the odd lot category, however, he is entitled to total, permanent disability compensation unless the employer or his insurer is able to show that some form of suitable work is regularly and continuously available to the employee within reasonable proximity to the worker’s residence. Turner v. American Mutual Ins. Co., 390 So.2d 1330 (La.1980). Other than the testimony of Cayard, the record is devoid of evidence of the availability of suitable work.
Based upon the foregoing, we find that the just resolution of this claim requires that we remand for further proceedings to determine whether plaintiff, because of her substantial pain and other factors such as mental capacity, education, and training, can perform no services other than those which are so limited in quality or dependability that a reasonably stable market for them does not exist, or whether some form of suitable work is available to plaintiff. Turner, 390 So.2d at 1331-2; see also Shatoska, 430 So.2d 1255, and Poland v. American Mutual Ins. Co., 409 So.2d 1292 (La.App. 2nd Cir.1982). If it is found that plaintiff cannot perform the same work that she did before her injury because it would cause her substantial pain, but she has the mental capacity and physical capacity to perform other jobs which are available, she should be considered partially disabled under the substantial pain doctrine and appropriate benefits awarded under La.R.S. 23:1221(3), Dauzat, 454 So.2d 807, and Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980). The award of penalties and attorney fees is hereby vacated and our consideration of the issue postponed until it is properly brought before us on appeal, should it be made a part of the trial court’s judgment on remand. Costs of this appeal are taxed to defendant.
AFFIRMED IN PART, VACATED IN PART AND REMANDED.