393 So.2d 1248 (1981)
Lorenza WILSON
v.
EBASCO SERVICES, INC. and Employees National Insurance Company.
No. 80-C-1507.
Supreme Court of Louisiana.
January 26, 1981.
*1249 John S. Keller, New Orleans, for plaintiff-applicant.
Paul Deal and Darryl Foster, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, for defendants-respondents.
DIXON, Chief Justice.
At issue in this worker's compensation litigation are the consequences of severe and constant pain as a result of an employment related injury, and the extent to which an employer may be required to furnish medical treatment.
Plaintiff is in her early thirties, and is a graduate of high school and a vocational program where she received secretarial training. She began employment with defendant in June, 1975 as a clerk-typist. Shortly after beginning her job with defendant, plaintiff was given the task of delivering mail throughout defendant's offices. This job involved lifting and carrying metal mail containers weighing approximately twenty-five pounds when loaded, and required plaintiff to climb stairs.
In February, 1976, after complaining of dizziness and alternating pain and numbness in her legs, plaintiff was hospitalized for treatment of anemia and thrombophlebitis. She was discharged from the hospital and returned to work, but remained under the care of a cardiologist, who prescribed various medications as well as support hose for plaintiff's condition.
On June 29, 1977, while lifting a metal mail container, plaintiff injured her back. Her employer was notified of this accident. Plaintiff consulted the physician who had been treating her for phlebitis, and was advised that she was suffering from a lumbar sacral sprain. In October, 1977, after appearing in a hospital emergency room complaining of back pain radiating down her legs, plaintiff was again hospitalized. The swelling in her legs and the tenderness of her calves was suggestive of phlebitis in an acute stage, but an orthopedic surgeon was also consulted in regard to plaintiff's complaints of back pain. Plaintiff was given medication and was discharged from the hospital approximately two weeks later with a corset for her back, and was thereafter regularly examined by the orthopedic surgeon.
In November, 1977 plaintiff was fired from her job by defendant, Ebasco Services, Inc., on the basis of her "continuing absence" from work. In January, 1978 plaintiff obtained employment at an airport, conducting security checks on passengers' baggage. She quit work after two or three weeks because of the pain in her legs and back. Between January and July, plaintiff was conservatively treated for her back problem by the surgeon, who believed that plaintiff's condition was caused by a simple lumbar sprain. In July, however, after a myelogram was conducted, the physician treating plaintiff diagnosed the possibility of ruptured discs in plaintiff's spine. A laminectomy was performed, and two ruptured discs were removed from plaintiff at the lumbar and lumbosacral levels. It is not disputed that this surgery was necessitated by the employment related injury more than a year before. Plaintiff was hospitalized for the last time in October, 1978 for treatment of her back and a possible recurrence of phlebitis.[1]
*1250 In order to alleviate the constant pain in her back following surgery, plaintiff had been supplied with a "transcutaneous neural stimulator" (T.N.S.), a device which is designed to short circuit the feeling of pain by means of electrodes implanted near the affected nerves. The T.N.S. device, a relatively new treatment, is said to be beneficial because it obviates the need for longterm medications which have a tendency to be addictive. However, the treating physician stated that plaintiff's pain and discomfort would be permanent, even though she might eventually be able to cope with it.
Plaintiff filed suit against her former employer and its compensation insurer, claiming that she was permanently and totally disabled. The trial court concluded that plaintiff was partially disabled, and awarded her compensation under the terms of R.S. 23:1221(3).
After trial was held, plaintiff filed a separate suit in which she sought a court order requiring her employer's insurer to furnish a letter of financial responsibility so that could gain admittance to the Mercy Hospital Pain Clinic for rehabilitative treatment. This action was dismissed on an exception of no cause of action, erroneously styled an exception of lis pendens and res judicata when filed with the district court. On both matters the judgment of the district court was affirmed by the Court of Appeal. Wilson v. Ebasco Services, Inc. et al., 386 So.2d 371, 386 So.2d 375 (La.App. 4th Cir. 1980). Plaintiff petitioned this court for review. We reverse.
Two issues are presented for consideration. The first is whether the courts below were in error in failing to find that plaintiff is totally disabled under the terms of R.S. 23:1221(1-2). The second issue is whether error was committed in upholding defendant's exception of no cause of action, effectively denying plaintiff the rehabilitative therapy which might assist her in rejoining the labor force.

Total Disability
The record clearly establishes the validity of plaintiff's claim for total disability. At trial, the depositions of four doctors were introduced into evidence. The two depositions introduced by plaintiff were taken from the two physicians who had treated her, Drs. Levy and Adatto. Of the two depositions introduced by defendant, one was taken from a doctor who had never examined plaintiff, although he reviewed her medical records; the other deposition was taken from a physician who had examined plaintiff both before and after surgery. Dr. Adatto, the orthopedic surgeon who performed the laminectomy on plaintiff, stated that plaintiff would always experience pain and discomfort on a permanent basis as a result of her surgery. The only hope held out by Dr. Adatto was that plaintiff would learn to adjust to her pain with the help of the T.N.S. device and therapy. At the time his deposition was taken, shortly before trial, Dr. Adatto was unwilling to state that plaintiff could return to work, although he did state that plaintiff should never perform any task that involved lifting, stooping or bending. Dr. Levy, the internist and cardiologist who treated plaintiff for phlebitis, deferred to Dr. Adatto's opinion regarding the prognosis for plaintiff's recovery from back surgery.
Defendant introduced the deposition of Dr. Williams, a thoracic and cardiovascular surgeon who had reviewed plaintiff's medical records. He expressed his opinion that the back surgery did not necessarily aggravate the preexisting phlebitis. Dr. Stokes, an orthopedic surgeon, actually examined plaintiff. It was his belief that plaintiff could eventually return to work, but, like Dr. Adatto, suggested that she refrain from any activity that involved bending, stooping or lifting. He further stated that, although some degree of pain would be unavoidable, the amount of pain which plaintiff experienced would depend upon the type of work that she did. Even though Dr. Stokes concluded that plaintiff was in good condition *1251 "mechanically," he expressed no doubt that she was actually suffering considerable pain, and was satisfied that plaintiff's complaints were sincere.
At the trial itself, plaintiff testified that her pain was too severe to return to work. She stated that she would be willing to resume employment if her physician recommended it, but that she would be unable to work if her pain remained at its present level. Her testimony was corroborated by her mother, who explained that plaintiff was unable to do anything but the lightest of chores around the house, and that plaintiff was even unable to push a grocery cart without incurring apparent pain.
The trial judge offered no written reasons for his judgment that plaintiff was only partially disabled. The only justification for this conclusion seems to be that plaintiff may be able to adjust to her pain, eventually, so that she could hold a job that would not involve any physical stress to her back. The Court of Appeal, while acceding to the trial judge's factual determination, also noted that some of plaintiff's pain and difficulty was caused by phlebitis, not the back condition. The court stated that: "If the phlebitis had been caused or aggravated by her injury her case for total disability would be much stronger." 386 So.2d at 374. While that conjecture is not incorrect, the record reflects that much needless effort was expended by counsel for both parties in inquiring into the causal connection between the phlebitis and the laminectomy.
Plaintiff's phlebitis, which is basically an inflammation of the veins, was a preexisting, recurrent condition, and one which caused intermittent pain. From the record, it would certainly appear that plaintiff's employer was aware that plaintiff suffered from this partially debilitating condition. Although there is some indication that the back surgery may have aggravated the phlebitis, the causal connection between the two is simply not relevant. The two conditions did not produce two discrete experiences of pain, but combined. Although there is sufficient evidence in the record to conclude that plaintiff's back pain, by itself, is sufficiently acute to prevent her from returning to work, it makes no difference if it is actually the combination of pain that is disabling. The case is like that of a worker who had only one good eye: if the sight in the good eye is lost through an employment related accident, the employer must bear the burden of furnishing compensation for the resulting blindness.
The legislature, in 1974, provided for such cases with a "Second Injury Fund" (R.S. 23:1371 et seq.), which entitles an employer to reimbursement for compensation under certain circumstances. See R.S. 23:1378. The purpose of the Second Injury Fund is to encourage the employment of handicapped persons "by protecting employers and insurers from excess liability for workmen's compensation for disability when a subsequent injury to such an employee merges with his preexisting permanent physical disability to cause a greater disability than would have resulted from the subsequent injury alone." R.S. 23:1371. It is interesting to note that the legislature specifically designated thrombophlebitis as one example of a preexisting permanent partial disability. R.S. 23:1378(F)(21). If it is true that part of plaintiff's pain and discomfort is caused by phlebitis and not by her back condition, the employer is nevertheless liable to compensate her for the full extent of the disability produced by the two physical problems. Rather than exploring the medically uncertain link between plaintiff's phlebitis and her back surgery, it might have been more efficient to explore the possibility of qualifying this case under the Second Injury Fund.
Whether it is the back condition alone which causes plaintiff's pain, or a combination of the back condition with the preexisting phlebitis, it is clear that plaintiff was totally disabled at the time of the trial. A worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Dusang v. Henry Beck Builders, Inc., 389 So.2d 367 (La. 1980); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980), and *1252 cases cited therein. Recently we have recognized that the jurisprudence relating to "working in pain" cases is merely an embodiment of the broader concept expressed in the "odd-lot doctrine." See Calogero v. City of New Orleans (80-C-2336) (La. 1980); Turner v. American Mutual Ins. Co., 390 So.2d 1330 (La.1980); Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980); Dusang v. Henry Beck Builders, Inc., supra.
Essentially, the odd-lot doctrine entitles an employee to compensation for total disability when, as a result of a compensable injury, he is rendered unable to perform any service for which a reasonably dependable market exists. The term "any gainful employment for wages," as used in R.S. 23:1221(1-2), must be understood to mean any gainful occupation which, as a practical matter, affords an injured worker an opportunity for employment. If such employment is not available to the worker because of the worker's injury and other individual factors, the odd-lot doctrine mandates that compensation be paid for total disability. It is in this sense that the injured worker who performs his tasks in pain falls within the ambit of the general odd-lot concept: an employee who experiences substantial pain when performing routine physical tasks may find that employment opportunities are severely limited. Normally, an employer would find it less desirable to hire someone who must endure serious pain while working than someone who does not; the fact of pain may restrict the scope of activities in which an employee can be engaged, and may result in the functional inability to perform certain duties. Moreover, recurrent pain may cause frequent absenteeism on the part of the disabled worker, either because of the inability to work when the pain is particularly intense or because of the necessity of seeking medical treatment. These factors, along with others, place the employee who must work in pain at a competitive disadvantage to healthy workers in finding employment. See Malone & Johnson, Workers' Compensation (2d ed. 1980), § 277 at 628-29. There is also a possibility that the injured employee may be more susceptible to a second injury, or that the prior injury may be aggravated in the course of employment, making the employer liable for the resulting disability. Depending upon the circumstances of the case, a worker who seeks employment despite the presence of severe and continuing pain may find that employment opportunities are gravely limited. In such a case, the injured worker is entitled to an award for total disability.
In the present case the circumstances are somewhat different from those addressed in Turner, Oster and Dusang, supra. In Turner, the claimant was a mentally retarded common laborer with a severe foot injury who was unable to return to his former employment. An initial award of partial disability benefits was made because of the possibility that he could find other gainful employment. This court remanded the case so that the district court could determine, in light of the plaintiff's physical and mental limitations, whether plaintiff could successfully obtain regular employment at some other job within his locality. In Oster, a sixty-one year old bookbinder with a serious hand injury was awarded total disability benefits by this court because her age and lack of training effectively denied her the opportunity for other employment; she was unable to return to her former occupation. In Dusang, this court found that an injured welder who continued to work after his accident would be able to find regular employment in the future, even though his injury required him to work in some degree of pain. An award of partial disability was made.
The facts of the present case are significantly different from those in Turner, Oster and Dusang. Here, the plaintiff is a relatively young woman who has acquired job skills enabling her to find employment in a fairly stable market. Unlike the plaintiffs in Turner and Oster, she is not handicapped by reason of her age, intelligence or training. However, unlike the plaintiff in Dusang, her pain has prevented her from seeking any other employment whatever. And, should plaintiff's disabling pain eventually subside, or should she become adjusted to it, *1253 she will still be unable to engage in any type of employment that involves stress to her back. The light secretarial work for which plaintiff is fitted by her training and experience is the most obvious employment available to her, and involves work which would not necessarily aggravate her back injury. Should plaintiff's pain be brought under control in the future, there is the possibility that she could return to an occupation that involves light clerical or secretarial work. Depending upon her ability to cope with pain, then, plaintiff may not necessarily qualify as an odd-lot worker.
However, the judgment should not be based upon speculation. At the time of trial, there can be no doubt that plaintiff was totally disabled. She was unable to perform the simplest of physical tasks without incurring substantial pain. No showing was made that any employment would be suitable for the plaintiff. Considering the level of pain which plaintiff apparently endures, there was sufficient proof that she would not be able to engage in any gainful occupation for wages.
On the record before us, plaintiff is permanently and totally disabled, and is entitled to compensation under the terms of R.S. 23:1221(2). If her condition becomes ameliorated to the extent anticipated by her physician, and if she is then able to find regular employment that does not involve any aggravation to her back, it would be appropriate for her former employer to seek modification of this judgment. R.S. 23:1331. The possibility that plaintiff may improve and find suitable employment is too tenuous a basis upon which to rest a judgment granting compensation for partial disability only.

Medical Treatment
Approximately a year after surgery, plaintiff was referred to the Mercy Hospital Pain Clinic by Drs. Levy and Adatto. She was evaluated at the clinic and it was recommended that she be admitted to the "pain unit program" so that she could obtain "pain coping skills" that would increase her range of activities and minimize her disability. Personnel from the clinic then contacted the employer's compensation insurer requesting a letter guaranteeing payment for services to be rendered. The defendant insurer refused to provide the guarantee: plaintiff cannot gain admittance to the program without such an assurance of financial responsibility. Suit was filed demanding a guarantee of payment, but the suit was dismissed on an exception of no cause of action.
R.S. 23:1203 states in part that it is the employer's duty to "furnish all necessary medical, surgical and hospital services, and medicines, or any nonmedical treatment recognized by the laws of this state as legal." The Court of Appeal, following a long-standing jurisprudential rule, determined that the liability for an injured employee's medical bills under this statute only arises when such expenses are actually incurred: "A workmen's compensation claimant is not entitled to an award for future medical expenses, but the right to claim such expenses is reserved to her." 386 So.2d at 376. See Andersen v. Eagle Asbestos Co., 355 So.2d 1082 (La.App. 4th Cir. 1978). See also Malone & Johnson, supra, § 287, n. 34-35. Plaintiff contends that she is not requesting an award of future medical expenses, but only a guarantee that her former employer will be liable for future medical expenses when incurred. This position is sound. The rule applies to an award of medical expenses, not a judicial determination that the employer will be liable for the expense of future medical treatment. In many hospitals admittance is contingent upon the patient's ability to pay. The refusal of an employer or insurer to guarantee payment for necessary treatment effectively denies admittance to the patient. If an employee cannot gain admittance for treatment, no expenses will be incurred. And, under the appellate court's ruling, if no expenses are incurred the employee cannot seek a judgment determining the employer's liability for the expenses of future treatment. The humanitarian purposes of the workers' compensation act are not served by keeping an injured employee out *1254 of a hospital with such revolving door logic. As a practical matter, the failure to furnish a guarantee of financial responsibility under circumstances such as this is tantamount to violating the statutory duty to "furnish all necessary medical ... services." R.S. 23:1203 (emphasis added).
Moreover, R.S. 23:1203 should be read in pari materia with R.S. 23:1314. The latter statute sets forth the allegations which are necessary to validate a petition for compensation. One such allegation provided for by the statute is the claim "that the employee has not been furnished the proper medical attention" by the employer. If this allegation is made, the complaint cannot be dismissed as premature. Instead, a judicial proceeding must be held to determine the merits of the complaint:
"... when such allegations are contained in such petition and are denied by the employer at the time fixed thereunder by the court, if it be shown that such allegations are without reasonable cause or foundation in fact, such petition shall be dismissed; and the question of whether or not such allegation[s] of ... failure to render medical attention ... [are] justified under the facts shall be determined by the court before proceeding with the hearing of the other issues involved." (R.S. 23:1314).
Plaintiff's petition falls within the scope of this statute, since she alleged that the compensation insurer's refusal to guarantee payment of her anticipated medical expenses deprived her of proper medical treatment recommended by her physicians. Because the petition fits within the scope of the statute, and sets forth an allegation sufficient to avoid dismissal on the basis of prematurity, the exception of no cause of action should not have been sustained. Indeed, the legislative intent was clearly to permit a hearing on the merits of the issue raisedwhether the employee has been furnished the proper medical attention by the employer.
On the narrow issue before uswhether the plaintiff's suit sets forth a cause of actionwe reverse the judgment below. However, we are not able to determine whether treatment at the pain clinic is actually necessary on the sparse record before us, since the case was decided on exceptions. A determination of what constitutes "necessary" and "proper" medical treatment should be based upon all relevant factors.
The case is remanded to the district court for a determination of the merits on this issue. If the court should find that treatment at the Mercy Hospital Pain Clinic is a necessary medical service in plaintiff's case, that judgment will amount to a declaration of defendant's obligation to furnish necessary and proper medical treatment.
The judgments of the Court of Appeal are reversed, and the cases are remanded for further proceedings. All costs of this proceeding are taxed to defendants.
MARCUS, J., dissents in part and concurs in part and assigns reasons.
BLANCHE, J., dissents in part and concurs in part and will hand down reasons.
LEMMON, J., concurs.
MARCUS, Justice (dissenting in part and concurring in part).
I agree with the courts below that plaintiff was partially disabled. La.R.S. 23:1221(3). I disagree with the majority that plaintiff proved that she was totally disabled under La.R.S. 23:1221(2). At the very least, I consider that the case should be remanded to the trial court to permit further evidence for a determination as to the applicability of the "odd lot" doctrine prior to making a finding of total disability. See Calogero v. City of New Orleans, 80-C-2336 (La., Dec. 23, 1980). I agree with the majority that plaintiff's suit sets forth a cause of action for a determination of whether the employer will be liable for the expenses of future medical treatment. Accordingly, I dissent in part and concur in part.
BLANCHE, Justice (dissenting).
I respectfully dissent. The first issue presented was one of fact. The trial court *1255 found plaintiff's pain was not so substantial as to render her totally and permanently disabled. The court of appeal reviewed the evidence and determined there was no manifest error in the trial court's award of benefits for partial disability. The third review by this Court decides that the lower courts were wrong and couple her back injury with her phlebitis and find her totally and permanently disabled. There was no reason to reverse the lower courts on this issue. Neither was manifestly erroneous in their judgment as to the extent of plaintiff's disability.
On the second issue concerning medical treatment, I concur that the employer should guarantee medical expenses when incurred as this is in keeping with the letter and spirit of the act requiring the employer to furnish all necessary medical services. R.S. 23:1203.
I therefore dissent on the issue of the extent of plaintiff's disability and would affirm the decisions below, and concur with this opinion's treatment of medical expenses and would reverse the judgment below on this issue.
NOTES
[1] The bill for this period of hospitalization was not paid by the employer's insurer on the grounds that treatment was provided only for phlebitis, not plaintiff's back condition. The Fourth Circuit, finding a sufficient connection between the back injury and the hospitalization, required payment. The insurer does not seek review of this judgment.