LOBRANO, Judge.
The lower court awarded plaintiff, Ricard Alexis, total and permanent workmen’s compensation benefits under the “odd lot” doctrine. Appellant, New Orleans Public Service, Inc. (NOPSI) perfects this appeal arguing that the trial court was in error in applying that doctrine, as well as failing to give more credibility to the treating physician’s testimony.
The facts of the injury are undisputed. Alexis was employed by NOPSI on January 10, 1982, as a utility man earning a gross pay of $223.80 per week. His job duties revolve around the maintenance of NOPSI buses, including removal of trash from their interior, changing the oil, fixing flats, cleaning of the buses and driving them through the service lanes. The first week at work Alexis attended a training program. The next week he began actual work when, on January 28, 1982, as he was changing the oil on one bus, another rolled forward crushing his legs between the bumpers of the two.
As a result of that injury, Alexis was paid his normal weekly wages until March 14, 1982, at which time he was placed on compensation benefits at the rate of $150.00 per week until July 11, 1982. The rate was then raised to $160.00 per week because of a rate change in NOPSI wages. Compensation benefits were thereafter paid through August 18, 1982. No further payments have been made by NOPSI.
We first note that the trial court, as stated in its reasons for judgment, found the following medical facts.
“Mr. Alexis was initially seen by Compa.ny Physicians who were unable to cure him and was referred to Dr. George Carey, who initiated conservative treatment to his left leg and for an infected hemoto-ma below the knee. He was hospitalized and treated with antibotics without success. On the 24th of May, 1982, he was readmitted and his infected bursa was removed. Dr. Carey discharged him July 30, 1982, to return to unrestricted work, despite his complaints of leg pain and hypersensitivity over the scar site, ¼ inch atrophy, numbness of his leg, and a squatting restriction. This physician assigned him a permanent 5% partial disability.
Dr. Stuart Phillips, an orthopod, examined the plaintiff who was complaining of pain on the medical side of the knee and of numbness below and to the outside of the knee. He opined that he had a severing of neroma of the infrapatella branch of the saphenous nerve resulting from the trauma or surgery (each of which is compensable) which caused him the loss of sensation and pain in the leg. A subsequent thermogram, examination and review of Dr. Carey’s records confirmed his opinion.
Dr. Phillips assigned the plaintiff a permanent 25% impairment of function of the left leg or I2V2 per cent bodily dis *1086 ability, and restricted his occupations to those that do not involve kneeling, running, climbing, squatting or those exposed to cold temperatures. He would not certify him to return to his former employment at New Orleans Public Service, Inc.
Both orthopods agreed that the plaintiff had paid over the incisional cite, numbness in the leg and atrophy of the left calf and that kneeling, squatting and stooping would accelerate his pain. Further, weather changes would influence his degree of pain.
The Court accepts Dr. Phillips testimony of disability as the most reasonable and credible as to plaintiffs disability. Unquestionably, plaintiffs continued complaints of substantial pain and numbness in his leg are justified and confirmed by both physicians.”
The trial court accepted Dr. Phillips’ testimony as the most reliable with respect to plaintiffs disability. Once the trial court in a workmen’s compensation case has made findings as to disability and lengths thereof, such determinations are entitled to great weight and are not to be disturbed except upon a showing of manifest error. Smith v. Orleans Parish School Board, 436 So.2d 586 (La.App. 4th Cir.1983). NOPSI argues that since Dr. Carey was the physician who performed the surgery his opinion of a 5% disability should have been given greater weight than the opinion of Dr. Phillips who assigned a 25% disability. Although our jurisprudence is well established that the opinion of the treating physician is to be given greater weight than that of a specialist who has seen the patient briefly,[1] we do not feel that is the situation in the instant case. Alexis was referred to Dr. Carey by NOPSI’s physicians when they could find nothing wrong. Dr. Carey, 6 months after the accident, and after conservative treatment, decided on surgery. Subsequent to the surgery, Alexis was still in pain and discomfort, and thus was referred to Dr. Phillips for further evaluation and treatment. His testimony, and medical reports are clear that he did more than merely see the patient briefly for evaluation. We therefore find no merit in NOPSI’s argument on this point. In fact, we note that the opinions of both doctors are very similar except with the assignment of a percentage of disability.
NOPSI also argues that the trial court erred in applying the odd lot doctrine. Under that doctrine a compensation claimant is considered totally disabled if his injury makes him an “odd lot” in the labor market, that is one capable of obtaining employment periodically, but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. Lattin v. Hica Corp., 395 So.2d 690 (La.1981); Jackson v. Maloney Trucking and Storage Co., 424 So.2d 1037 (La.App. 4th Cir.1982). Substantial pain can prevent gainful employment for wages so as to entitle an injured worker to total disability under the odd lot doctrine. Wilson v. Ebasco Services, 393 So.2d 1248 (La.1981).
Alexis proved to the satisfaction of the trial court that he would be unable to return to his former job without incurring substantial pain. His 25% permanent impairment of the left leg prevented his kneeling, climbing, squatting or being exposed to cold temperatures. We find no error in this conclusion. It was then incumbent upon NOPSI to prove that there is suitable work in the job market available to Alexis, given his physical impairment, training and education. As this Court stated in Lee v. Pratt-Farnsworth Construction Co., 397 So.2d 2 (La.App. 4th Cir. 1981):
“Once the employee establishes that he is working in substantial pain and he further establishes a prima facie case that because of his physical impairment and other factors such as mental capaci *1087 ty, education and training, a reasonable stable job market does not exist for his services, the burden shifts to the employer to rebut the prima facie case with evidence that some form of suitable work is available as a practical matter to that employee.” id at ⅛.
We agree with the trial court that NOPSI failed to introduce any evidence whatsoever to prove that a job market existed for Alexis in the metropolitan New Orleans area. Alexis has expressed an interest in seeking further education and rehabilitation. If his further education and rehabilitation or his physical condition improves to a point where he is able to find regular employment, it may be appropriate for NOPSI to seek modification of this judgment under La.R.S. 23:1331.
For the above and foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.

. See, O’Donovan v. Bankers Life and Casualty Company, 305 So.2d 643 (La.App. 3rd Cir.1974), and the cases cited therein.