CANNELLA, Judge.
Appellants, Tompkins-Beckwith, Inc. and its insurer, Employers National Insurance Co., appeal from a judgement in favor of appellee, Charles Borne, awarding him worker’s compensation benefits for permanent and total disability, penalties in the amount of 12% on the amount due and attorney’s fees of $10,000.00. We affirm in part and reverse in part.
Appellee was employed by Tompkins-Beckwith, Inc., who was under contract with Ebasco Services, Inc. to complete the process piping system of Waterford III, a nuclear power plant owned by Louisiana Power and Light. On December 20, 1980, appellee was injured when he was struck in the head by a U-bolt that was being moved by a crane. The blow was severe, throwing him into the air and causing him to fall several feet to the ground. Appellee was immediately hospitalized with serious injuries to his head and face. He had pain in his left wrist, right hand and leg. On February 9, 1981 appellee was released by his physician, Dr. Smith, to return to work. Appellee started back to work and his compensation benefits were terminated. He has been working in pain since the accident.
On April 7, 1981 appellee filed a tort action against Ebasco Services, Inc., claiming the injuries he suffered were a direct result of intentional acts of Ebasco employees. On January 19, 1982 Ebasco filed a Motion for Summary Judgment and on January 25, 1982, appellee filed his “First Amended Petition”, adding as defendants, Louisiana Power and Light, Tompkins-Beckwith and its insurer, Employers Casualty Company. In addition to the tort claim, appellee asserted a worker’s compensation claim against the latter two defendants.
It appears from a review of the record that the tort claim was vigorously contested and the worker’s compensation claim lay somewhat dormant.[1] After the dismissal of the tort action, the parties began extensive discovery procedures in the worker’s compensation claim and it came to trial on May 2, 1991. The trial court held in favor of appellee, finding that he was in constant, substantial pain and was permanently and totally disabled under the Worker’s Compensation Act and entitled to benefits thereunder. The trial court also awarded penalties of 12% on each overdue payment and attorney’s fees of $10,000.
Appellants challenge the trial court judgment herein, arguing that the trial court erred in finding that appellee was in constant, substantial pain and permanently and totally disabled. Further, appellants argue that the lower court erred in holding them liable for penalties and attorney’s fees. Appellants contend that appellee re *1197 turned to work some two months following the accident and has worked continuously, through the present time. Accordingly, ap-pellee should not receive an award for permanent and total disability under the Worker’s Compensation Act because he has been and is gainfully employed.
Appellee contends the trial court was correct in awarding him compensation benefits for permanent and total disability, despite the fact that he has returned to work, because he can only work in constant, substantial pain. He asserts that he should not be penalized for pushing himself and working in pain.
At the time of appellee’s injury, the Worker’s Compensation Act provided, in La.R.S. 23:1221(2), for permanent total disability, as follows:
For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training and experience, sixty-six and two-thirds per centum of wages during the period of such disability, (as amended by Acts 1975, No. 583, § 9)
Our courts have expanded the traditional notions of inability to work to include workers who are able to do some work, but only in substantial pain. It is well settled, that an employee who can only work in substantial pain, may be totally disabled. Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984); Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Lattin v. Hica Corp., 395 So.2d 690 (La.1981); Whitaker v. Church’s, 387 So.2d 1093 (La. 1980); Picou v. Circle, Inc., 578 So.2d 1183 (La.App. 5th Cir.1991).
In Oster v. Wetzel, 390 So.2d 1318 (La. 1980), the Supreme Court recognized that the jurisprudence relating to “working in pain” cases is merely an embodiment of the broader concept expressed in the “odd-lot doctrine.” Wilson v. Ebasco Services, Inc. 393 So.2d 1248 (La.1981).
In Wilson the court explained:
Essentially, the odd-lot doctrine entitles an employee to compensation for total disability when, as a result of a compensable injury, he is rendered unable to perform any service for which a reasonably dependable market exists. The term “any gainful employment for wages,” as used in R.S. 23:1221(1-2), must be understood to mean any gainful occupation which, as a practical matter, affords an injured worker an opportunity for employment. If such employment is not available to the worker because of the worker’s injury and other individual factors, the odd-lot doctrine mandates that compensation be paid for total disability. It is in this sense that the injured worker who performs his tasks in pain falls within the ambit of the general odd-lot concept: an employee who experiences substantial pain when performing routine physical tasks may find that employment opportunities are severely limited. Normally, an employer would find it less desirable to hire someone who must endure serious pain while working than someone who does not; the fact of pain may restrict the scope of activities in which an employee can be engaged, and may result in the functional inability to perform certain duties. Moreover, recurrent pain may cause frequent absenteeism on the part of the disabled worker, either because of the inability to work when the pain is particularly intense or because of the necessity of seeking medical treatment. These factors, along with others, place the employee who must work in pain at a competitive disadvantage to healthy workers in finding employment. See Malone & Johnson, Workers’ Compensation (2d ed. 1980), § 277 at 628-29. There is also a possibility that the injured employee may be more susceptible to a second injury, or that the prior injury may be aggravated in the course of employment, making the employer liable for the resulting disability. Depending upon the circumstances of the case, a worker *1198 who seeks employment despite the presence of severe and continuing pain may find that employment opportunities are gravely limited. In such a case, the injured worker is entitled to an award for total disability. (Emphasis provided).
Of course, as noted in Culp v. Belden Corp., 432 So.2d 847 (La.1983),
“... [I]n compensation situations where pain is the linchpin to make out a prima facia case for a worker’s classification in the odd lot category, the pain accompanying routine physical tasks and attempts to return to work must be substantial, serious, intense and/or severe.”
In the instant case, the trial court found that appellee works in substantial pain. The court found, regarding appellee’s physical disability and pain, that “Every medical contraption known to medical science has either been employed or is in the process of being used. On a scale of one to ten, Borne rides the sevens and at times hits tens.” Also, from the time of the accident, appellee has been under constant medical care. He has had fairly constant complaints of back pain, neck pain and headaches. He has seen numerous physicians, neurosurgeons, orthopedic specialists and dental specialists to get relief from his pain, all to no avail.
Appellee worked as a pipefitter at the time of his injury. After the accident, ap-pellee tried to go back to that same work because it was basically all he knew. Ap-pellee continued as a pipefitter through 1984, with constant pain and continuous trips to the doctor for various forms of treatment. By 1985 he was unemployed. He tried insurance sales but was not successful. Finally, in 1986, appellee began working at Interstate Ford as a car salesman. This job was less physically demanding than pipefitting but had a corresponding reduction in pay of almost 50%. Nevertheless, appellee worked hard, studied, went to training classes and finally, in 1988, was succeeding at his new occupation, but still with substantial daily pain.
Appellee testified at length and in detail about his pain, how it builds up throughout the day. By noon he must take a break and sit to relieve the back pain. He rests periodically but is in severe pain by the end of the day, especially on busy days where more activity is required.
The medical testimony supports appel-lee’s testimony that he is in constant, substantial pain. Dr. Razza, an orthopedic surgeon, has treated appellee since 1982. He stated that appellee sufferers from low back pain and neck pain. Dr. Razza stated that the possibility of improvement was remote. There is an even greater possibility that appellee’s condition will deteriorate. He found: “In the region of his neck, he has two levels of disc degeneration with superimposed protrusions or herniation. So he has degenerate discs that in addition are bulging or putting pressure on the spinal canal.” Dr. Razza also stated the MRI of the spine showed degeneration at both C5-6 and C6-7 levels (lower back) with a ruptured disc at the C5-6 level. There are other doctors reports releasing appellee to work, but as pointed out in Johnson v. Ins. Co. o/N. America, supra, and Whitaker v. Church’s Fried Chicken, Inc., supra, a medical release is not equivalent to a legal determination of disability.
Appellee’s co-workers confirmed that ap-pellee worked in pain. Mr. Brignac, the sales manager at Interstate Ford, testified that the job at Interstate involves virtually no physical labor. Yet, he remembered appellee complaining of back pain a couple of times a month. Mr. Reeder, the fleet manager, stated that he remembered occasions when appellee called in because he was unable to come to work. Mr. Reeder also stated he knew appellee wore a corset. Appellee’s wife also confirmed that, almost daily, her husband was in extreme pain when he comes home from work.
Appellant relies mainly on the fact that appellee often went fishing on Saturdays to contradict his showing that he works in constant, substantial pain. The trial court and this court find this insufficient.
Accordingly, we do not find that the trial judge was clearly wrong in finding that appellee works in constant, substantial pain. On the contrary, the evidence amply supports the judgment and we affirm it.
*1199 [2] Appellant argues that even though appellee works in pain, because he does work, he is not entitled to compensation for permanent and total disability.
As stated previously, the fact that an employee can only work in substantial pain, brings him within the ambit of the general odd-lot concept. Oster v. Wetzel, supra; Wilson v. Ebasco, supra. In Calogero v. City of New Orleans, supra, the Supreme Court held:
The presence of substantial pain may logically cause an injured worker to fall into this odd-lot category, inasmuch as it directly affects “the probable dependability with which the injured worker can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary luck, or the superhuman efforts of the claimant to rise above his crippling handicaps.” L.A. Larson, The Law of Workmen’s Compensation, § 10-164.49 (1980); see W. Malone and H. Johnson, Worker’s Compensation §§ 624, 627-29 (2d ed. 1980).
Because appellee experiences substantial pain in proportion to his physical activities, his employment opportunities are severely limited. Appellee’s original trade was in a very physical field, as a pipefitter. He can only perform his current job because of its low physical requirements. Even so, he still works in pain. Appellee studied and trained to master his automobile job, but has no education or general training that would make him a good competitor in the open market. His physician stated that his condition will probably deteriorate with time, thus his physical abilities will decrease. He will need more consideration and his absenteeism is likely to increase. These factors place appellee, who must work in substantial pain, at a competitive disadvantage to healthy workers in finding employment and, as such, entitle him, as found by the trial court, to an award for permanent and total disability under the Worker’s Compensation Act.
“In a compensation case, the trial court has the responsibility of determining whether a plaintiff is disabled. Simpson v. S.S. Kresge Co., 389 So.2d 65 (La.1980). A factual finding by the trial court should not be reversed unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). A reviewing court should not disturb a reasonable evaluation of credibility by the trial court. Crump v. Hartford Ace. & Indem. Co., 367 So.2d 300 (La. 1979).” Johnson v. Ins. Co. of N. America, 454 So.2d 1113 (La.1984).
We have considered the findings of the trial court and do not find them to be clearly wrong. We, therefore, affirm the trial court’s ruling that appellee is permanently and totally disabled and the corresponding worker’s compensation award, with credit for payment already made.
We turn now to the issues of penalties and attorney’s fees.
The law in effect at the time of appellee’s accident was La.R.S. 22:658, which provided for penalties of 12% on the amount due by the insurer and reasonable attorney’s fees, when the failure to pay worker’s compensation insurance “is found to be arbitrary, capricious, or without probable cause.”
In Guillory v. Travelers Insurance Co., 294 So.2d 215 (La.1974) the Supreme Court found that “[T]he purpose of this penalty provision is to deter insurers from unjustified termination of payments to injured employees during the period of their distress.” And further, that “penalties should be imposed only in those instances in which the facts negate probable cause for nonpayment.” As noted recently by this court in Picou v. Circle, 578 So.2d 1183 (La.App. 5th Cir.1991):
A termination of compensation will not be held to have been arbitrary or capricious where the insurance carrier bases its decision to terminate on competent medical evidence. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982).
Appellee was treated for his injuries at the time of the accident by Dr. Smith and Dr. Anastasio. On February 9, 1981, ap-pellee was released for work by these physicians and did in fact return to work at that time. Later, in April of 1981, appellee saw Dr. Anastasio again and by May, Dr. *1200 Anastasio felt that there was no permanent disability and that appellee could work without restrictions. Again, upon seeing Dr. Anastasio in April of 1984, he speculated that the problem might be congenital. Dr. Levy, the family physician, saw appel-lee in April of 1983 and concluded at that time that "the patient is medically able to return to work at full capacity.” Dr. Raz-za, whose testimony was most convincing regarding appellee's permanent degenerative disability, did not issue a report prohibiting appellee from work.
Therefore, in view of the medical reports releasing appellee to work, the medical causation issues and significant legal issues addressed herein, there were substantial questions involved here that make a finding of “arbitrary and capricious” erroneous. We find that the appellants did not act arbitrarily or capriciously in not paying the disputed worker’s compensation benefits. Accordingly, we reverse the trial court judgment awarding penalties and attorney’s fees.
For the foregoing reasons, the district court judgment is affirmed insofar as it awarded appellee worker’s compensation benefits for permanent and total disability, and is reversed insofar as it awarded penalties and attorney fee’s, with appellants to bear the costs of court.
AFFIRMED IN PART; REVERSED IN PART.

. The record shows extensive discovery in the tort claim. Ebasco and Tompkins-Beckwith filed Motions for Summary Judgment and LP & L filed an Exception of Prescription. The Tompkins-Beckwith Summary Judgment was granted on February 2, 1984. The Ebasco Summary Judgment and the LP & L prescription exception were continued by appellee’s counsel numerous times until June 5, 1985, when they were both heard and granted. On review, this court affirmed and the Supreme Court denied writs on April 26, 1986, ending the tort claim.