STEWART, J.
 

 1,Defendant-Appellant, General Motors Assembly Division (“General Motors”), is appealing a judgment granted in favor of Plaintiff-Appellee, Johnny M. Giles. For the following reasons, we affirm the portion of the judgment of the trial court awarding Giles total and permanent benefits. Additionally, we affirm the portion of the judgment denying Giles penalties and attorney’s fees. We reverse the portion of the judgment which declared that General Motors was entitled to credit for the weeks that Giles worked from the day of the accident to December 20, 2007.
 

 Facts
 

 On March 16, 1981, Mike Giles, an employee who was a welder/millwright at General Motors, was injured in an accident on the job. On the day of the accident, Giles was told to climb onto a platform approximately 15-20 feet high to repair a conveyor. After Giles completed the repair work, he fell to the concrete floor, which was 15 feet below. The fall caused Giles to sustain severe injuries to his left arm, left leg, and left ankle. He has had a total of nine surgeries to repair his injuries, five of which were performed on his lower left leg, ankle and foot, three were performed on his left arm and elbow, and one surgery was performed on his right elbow. The surgery to his right elbow resulted from the overuse of his right arm, due to his substantially decreased use of his left arm.
 

 Dr. Lee Etheredge was Giles’s treating orthopedist from 1981 until he retired in 2001. Dr. Etheredge performed the first three surgeries on Giles’s left ankle and foot. Dr. Etheredge opined that Giles has 50% disability of 12his left leg. Dr. Ether-edge also performed three surgeries on Giles’s left arm and elbow. He determined that Giles has 55% disability of his left arm.
 

 After Dr. Etheredge retired, Giles was referred to Dr. James Lillich, who performed two additional fusion surgeries on Giles’s left ankle. Giles is currently under the care of Dr. Lillich, who continues to perform debridement procedures to his left foot every six weeks due to callus formation.
 

 Dr. Anil Nanda performed the surgery on Giles’s right elbow, which was necessary due to the overuse of his right arm.
 

 Giles has been under medical care and treatment from March 16, 1981, up to, including, and beyond the trial date of December 4, 2007. Due to his injuries, his left foot and leg have atrophied throughout the years, and his left foot is one-half size smaller than his right foot. Giles’s left leg is three-fourths of an inch shorter than his right leg, which caused Giles to develop a pronounced limp. This limp has caused him to incur back problems.
 

 Additionally, Giles’s left arm cannot be fully extended. His left arm is also shorter than the right arm due to the surgical removal of some of his bone. Because of Giles’s inability to use his left arm to any great extent, ulnar release surgery was performed on his right arm due to overuse.
 

 
 *846
 
 Giles has continued to work for General Motors, but not in the same capacity as before the accident. He was given a “desk job” in a parts crib, where he takes inventory for various parts and takes orders for parts and fills them. He was also given handicap parking at General Motors and is | sallowed to ride in a buggy from the entrance to his parts crib. Giles has taken Tylenol daily during the duration.
 

 Because of his condition, disability and substantial pain, Giles asserts that he is totally and permanently disabled pursuant to the 1975 Worker’s Compensation Act, Act 583, La. R.S. 23:1222(2). This act was in effect prior to the 1983 reform of the worker’s compensation statutory scheme. General Motors argues that Giles is not entitled to any worker’s compensation indemnity benefits, other than what has already been paid.
 

 At the time of Giles’s injury, he was earning $11.40 per hour for forty hours per week, with time and a half for overtime work. At the time of the trial, he was earning approximately $33.00 per hour.
 

 The parties agreed that this case is governed by the worker’s compensation law which was in effect prior to the 1983 reform of the worker’s compensation statutory scheme. This matter was tried on December 4-5, 2007. The trial court determined:
 

 “Plaintiff falls within the substantial pain framework that was in existence at the time of his injury. That seems very clear, particularly from the testimony of Dr. Etheredge.”
 

 The trial court’s judgment was rendered on December 20, 2007. It stated in pertinent part:
 

 “I. Plaintiff Johnny M. Giles, is hereby declared and adjudicated to be totally and permanently disabled under R.S. 23:1221(2), Act 583 of 1975, and is awarded total and permanent disability benefits in the amount of $163.00 per week from the date of the accident, March 16, 1981 for the remainder of the life of Plaintiff, or until further orders of this |4Court, together with all reasonable and necessary medical expenses, subject, however, to a credit for all worker’s compensation benefits paid and for a credit for each week worked by plaintiff from the day of the accident until December 20, 2007 forward, no credit is to be given for weeks worked by plaintiff.”
 

 Additionally, the trial court imposed court costs upon General Motors, including Dr. Etheredge’s expert witness fee. Giles’s claim for attorney’s fees and penalties was denied.
 

 General Motors now appeals, asserting that Giles is not entitled to permanent and total indemnity benefits, partial indemnity/disability benefits, nor penalties and attorney’s fees.
 

 LAW AND DISCUSSION
 

 General Motors raises one assignment of error in its appeal. In this assignment, General Motors argues that the trial court erred in determining that Giles was entitled to permanent and total indemnity benefits based on the substantial pain and/or odd lot doctrines.
 

 A worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability.
 
 Wilson v. Ebasco Services Inc. and Employees National Insurance Company,
 
 393 So.2d 1248 (La.1981). The term “any gainful employment for wages,” as used in La. R.S. 23:1221(1-2), must be understood to mean any gainful occupation which, as a practical matter, affords an injured worker
 
 *847
 
 an opportunity for employment. If such employment is not available to the worker because of the worker’s injury | sand other individual factors, the odd-lot doctrine mandates that compensation be paid for total disability.
 
 Wilson, supra.
 

 Under the odd-lot doctrine, the plaintiff is entitled to total and permanent disability benefits if the evidence of his physical impairment, mental capacity, education, and training indicates that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist.
 
 Oster v. Wetzel Printing, Inc.,
 
 390 So.2d 1818 (La. 1980). Normally, an employer would find it less desirable to hire someone who must endure serious pain while working than someone who does not; the fact of pain may restrict the scope of activities in which an employee can be engaged, and may result in the functional inability to perform certain duties. Depending on the circumstances of the case, a worker who seeks employment despite the presence of severe and continuing pain may find that employment opportunities are gravely limited.
 
 Wilson, supra.
 

 The Supreme Court has held that the plaintiff who qualifies under this standard for odd-lot classification is entitled to benefits for total and permanent disability under LSA-R.S. 23:1221(1-2), because of his inability to “engage in any gainful employment for wages.”
 
 Thornhill v. Luke Construction Company,
 
 468 So.2d 758 (La. App. 1 Cir.1985).
 

 Dr. Etheredge testified that Giles’s pain level could “wax and wane.” He further testified that even though Giles did a good job of managing his pain and that the pain was not constant, “Mike Giles lived and worked in substantial pain.” Dr. Ether-edge also stated that Giles never complained to |r,him of any problems he had with General Motors accommodating his restrictions.
 

 During the time in which Giles was forced to miss work due to his injuries, General Motors paid indemnity benefits. When Giles recovered from his injuries to the extent that he could return to work with restrictions, General Motors accommodated those restrictions. Giles has continued to work at General Motors for more than 25 years, during which time he has been able to perform his job duties, has not been demoted, and has received constant pay raises.
 

 Charles Lopez, Giles’s supervisor from 2004 until the day of the trial, also testified. Lopez testified that during the time in which Giles was under his supervision, he was not aware of any complaint made by Giles relative to his job as a crib attendant, nor was he aware of any time that Giles missed work due to substantial pain. However, he did point out that, on occasion, Giles would ask for help in gathering some items. He further stated that Giles had performed his job in a very satisfactory manner, and that whenever overtime was offered to Giles, he would perform the overtime work.
 

 Giles also testified at trial. At the time of the trial, Giles was still working 40 hours per week, and occasionally worked overtime. Giles acknowledged that General Motors did accommodate his restrictions, and that he was allowed to sit, stand, and prop his feet upon his work desk, while working in his “modified job” as a crib attendant. Giles has not had|7to miss any time from work due to his injury, since his most recent surgery in 2004. Giles further asserts that he has been treated for the injuries relating to the accident since the date of the accident until the day of the trial, and continues to be treated. Giles states in his brief that he
 
 *848
 
 has lived and worked in substantial pain since the accident, with pain being his “constant companion.”
 

 In the instant case, even though Giles was able to continue to work for General Motors, he was unable to continue to work as a welder/millright. Instead, he was given a “desk job” to accommodate his restrictions. Based on the record and the evidence presented, there is no doubt that Giles lived and worked in substantial pain from the time of the accident until the date of the trial. Considering the level of pain that Giles endured, there is sufficient evidence that he would be unable to engage in any gainful employment. For these reasons, we can determine that the trial court was correct in determining that he was in substantial pain and therefore totally and permanently disabled pursuant to Act 583 of 1975.
 

 Giles addresses two main issues in his brief. In the first issue, Giles argues that the trial erred in allowing General Motors credit for the weeks that Giles worked from the day of the accident to December 20, 2007. Giles argues that the relevant law, La. R.S. 23:1221(2) and Act 583 of 1975 do not provide for any such credit, and that there is no case law to his knowledge that would interpret those statutes to provide for such credit. As stated above, this case is governed by the worker’s compensation law which Rwas in effect prior to the 1983 reform of the worker’s compensation statutory theme.
 

 Giles suggested that the trial court used “the concept of equity, not law, in granting General Motors a credit because General Motors allowed Giles to continue to work with them in a different job, suited to his work restrictions, etc.” He asserts that he should not be penalized because he chose to work in substantial pain.
 

 The law relative to credit for wages is summarized in
 
 LeBlanc v. Mangel’s of Louisiana, Inc.,
 
 306 So.2d 422 (La.App. 3 Cir.1975).
 

 The basic test in Louisiana for determining whether wages are paid in lieu of compensation is whether the wages are paid after the injury are actually earned.
 
 Lindsey v. Continental Casualty Company,
 
 242 La. 694, 138 So.2d 543 (1962);
 
 Madison v. American Sugar Refining Company,
 
 243 La. 408, 144 So.2d 377 (1962). This issue depends on the facts of each case.
 
 Madison v. American Sugar Refining Company, supra; Francis v. Kaiser Aluminum and Chemical Corporation,
 
 225 So.2d 756 (La.App. 4th Cir., 1969);
 
 Daigle v. Liberty Mutual Insurance Company,
 
 205 So.2d 507 (LaApp. 3 Cir., 1968). No inference arises that wages were paid in lieu of compensation from the fact that the work performed after the accident was lighter or dissimilar from that done prior to the accident.
 
 Ledoux v. William T. Burton Company,
 
 171 So.2d 795 (La.App. 3 Cir., 1965). Although the plaintiffs duties had changed somewhat since the accident, there is no indication in the record that her employer was paying her gratuitously.
 

 If they [wages] are not earned, they are presumed to be in lieu of compensation.
 
 Lindsey v. Continental Casualty Company,
 
 242 La. 694, 138 So.2d 543 (1962).
 

 | <|Giles has continued to work at General Motors for more than 25 years, during which time he has been able to perform his job duties, has not been demoted, and has received constant pay raises. As stated above, Giles was earning $11.09 per hour at the time of the injury. At the time of the trial, he was earning approximately $33.00 per hour. Giles has worked 40 hours per week, and occasionally worked overtime.
 

 
 *849
 
 General Motors accommodated Ms restrictions, and allowed Mm to sit, stand, and prop his feet upon Ms work desk, while working in his “modified job.” Even though Giles was assigned lighter duties, he did indeed earn his wages. The trial court determined that General Motors was entitled to credit for the weeks that Giles worked from the day of the accident to December 20, 2007. We disagree because the wages paid to Giles were actually earned, and not paid in lieu of compensation. The fact that Giles had lighter duties as a crib attendant than he had as a welder/millright, does not negate the fact that Giles earned his wages. The record fails to indicate that General Motors was paying him gratuitously. Therefore, General Motors is not entitled to credit for the weeks Giles worked from the day of the accident to December 20, 2007.
 

 In the second issue, Giles argues that the trial court erred in failing to award him penalties and attorney’s fees.
 

 The law in effect at the time of the accident, Act 482 of 1958, R.S. 28:1201.2, provided that an employer who fails to pay worker’s compensation benefits and is found to be arbitrary, capricious, or without probable cause, is subject to a 12% penalty and reasonable attorney’s fees.
 

 | l0Giles asserts that General Motors was aware of his medical condition, that he had undergone nine surgeries, and that he could no longer work as a welder/millwright. General Motors also declined when legal demand was made upon it for the payment of worker’s compensation payments from the date of the accident forward. For these reasons, Giles submits that the trial court erred in failing to award penalties and attorney’s fees.
 

 General Motors paid indemnity benefits when Giles was absent from work due to his injuries. When Giles was finally able to return to work, General Motors transferred him to a less strenuous job to accommodate his newfound restrictions. Giles continued to work at General Motors in that capacity for more than 25 years. After reviewing this case in its entirety, we find that General Motors did not display an arbitrary and capricious refusal to pay worker’s compensation benefits, nor did General Motors have probable cause to believe that Giles was entitled to worker’s compensation benefits from the date of the accident forward.
 

 CONCLUSION
 

 For the aforementioned reasons, we affirm the portion of the judgment of the trial court awarding Giles total and permanent benefits. Additionally, we affirm the portion of the judgment denying Giles penalties and attorney’s fees. We reverse the portion of the judgment which declared that General Motors was entitled to credit for the weeks that Giles worked from the day of the accident to December 20, 2007. Costs of the appeal are assessed to the appellant.
 

 AFFIRMED IN PART; REVERSED IN PART.